No. 17,634.

JAMES CURRENCE *v*. DENVER TRAMWAY CORPORATION.
(287 P. [2d] 967)

Decided September 19, 1955.    Rehearing denied October 10, 1955.

Messrs. McComb, Zarlengo & Mott, for plaintiff in error.

Messrs. Robertson & Danks, for defendant in error, Mr. Montgomery Dorsey, of counsel.

*En Banc.*

Mr. Justice Holland delivered the opinion of the Court.

AN amended complaint filed September 3, 1953, named the Denver Tramway Corporation, Public Service Company of Colorado, Herbert Moss, Floyd M. Winslow, Edna Winslow, A. C. McMillon, Aletha McMillon, and Charles A. Willis, individually and doing business as Motor Crane Service, a copartnership, defendants. All defendants except the Denver Tramway Corporation were dismissed out of the case and the proceedings concerning such dismissal, and other events in the litigation, are not of consequence here.

June 26, 1950, Evans, a contractor, was constructing a one-story building on the corner of 6th avenue and Fillmore street in Denver. He hired plaintiff in error, who will herein be designated as plaintiff, and Ness, another workman, to do the steel work according to blue prints furnished them, which included the placing of steel columns and I beams in position. The contractor rented a crane and operator from Motor Crane Service to assist plaintiff and his co-workman in the movement of the steel. Eleven or twelve steel beams were piled on the parking parallel to East 6th avenue. These beams were about fifteen feet long, weighing approximately 350 pounds. The day previous the contractor had telephoned for a small crane to move the beams from the pile to the building location, a distance varying from ten to one hundred feet. Motor Crane Service, instead sent a 20-ton capacity crane with a 55-foot boom, and when objections were made by the contractor to the size of the crane, he was told it was the only one available on the morning in question. Plaintiff and Ness arrived on the job to control the locating or spotting of the crane, and the control of the movement of the beams was under their direction as well as the crane operator. Plaintiff and all others on the job at the time of the arrival of the crane discussed the danger involved if the crane or cable came in contact with the power line running east and west along the south side of the East 6th avenue at that point. This power line was maintained and operated by

the Tramway Corporation. Plaintiff is not sure whether he gave the order for the spotting of the crane or his co-worker, Ness. The contractor did not think the wires were close enough to cause trouble and he did not notify defendant company of the use of the crane in moving the beams. The crane was placed inside the building line and the boom extended east and slightly north. The operator of the crane wanted to keep the boom level with the ground until the beams were pulled out from under the wires, but either plaintiff or his co-worker, Ness, decided otherwise, saying there would be no danger. The boom extended in the air at an angle from its rig. The steel workers would attach the cable extending from the edge of the boom and hook it onto the beam to be moved by use of "spreaders." When they gave the signal the crane operator would reel in the cable, plaintiff at one end of the beam and Ness at the other for guidance. Several beams had successfully been moved without incident; however, on the morning in question, plaintiff and his co-worker had attached the cable to one of the remaining beams; the crane operator started to pull in the cable; he saw a flash of electricity and both workers were knocked to the ground unconscious. The evidence discloses that the electric charge came from defendant's power line. It is not clear whether the boom of the crane touched the power line or whether it was from a swaying of the cable; however, the evidence shows that the electricity came from the lower set of wires, which were insulated. Plaintiff contends that if the wires had been insulated properly no electricity would have entered the cable, even though it touched the wires. The Tramway's chief engineer testified that the line is inspected from time to time. In his amended complaint, plaintiff alleged permanent injury and total disability; that he had incurred, and would incur, medical and hospital expenses amounting to $5,000 or more; and that on account of the total disability, he claimed to be damaged in the sum of $125,000.

At the close of plaintiff's evidence, the trial court sustained the Tramway's motion to dismiss. The grounds of this motion were that plaintiff had failed to prove by competent evidence any negligence on the part of defendant; and if any negligence was established, it was not the proximate cause of the accident; and further, that plaintiff was guilty of contributory negligence as a matter of law.

In presenting the matter here on the writ of error, counsel for plaintiff contend that the trial court was in error in dismissing the cause of action, and that there was sufficient negligence shown against defendant to warrant submission of the case to the jury. Counsel for defendant contend that the record is void of any evidence establishing negligence on the part of the Tramway, and any negligence that was rampant on the date and place in question was not that of the Tramway, and contend that the negligence lies with the Motor Crane Service in sending out the kind of crane that it did for the job involved; and that the contractor was negligent in allowing a crane of this size to move in on such a small job.

While we have no indication of the basis of the trial court's ruling as to whether it was a failure to prove negligence or whether it was on the contributory negligence of plaintiff, we, after due consideration of all the evidence, are of the opinion that either ground was sufficient to support the trial court's action.

■■ Counsel for plaintiff contend that defendant company failed in its duty to provide proper safeguards and warning signs, and for that reason, its negligence is apparent. There is no showing that defendant company, in the construction and maintenance of its power lines, had not complied with all safety codes or ordinances and regulations. Its duty involved the exercise of reasonable care commensurate with the dangers involved. It was not required to protect against any and all possible eventualities. Such requirement would make defendant com-

pany an insurer, whereas its only duty was to guard against probabilities. It cannot be held to be negligent in not anticipating such an occurrence as is here presented, that is, the operation of an oversize crane near its power lines. The negligence heretofore observed as being rampant on this occasion was that of the contractor and Motor Crane Service. Their knowledge of the known danger and their disregard thereof fixes the proximate cause of the accident. Their negligence, of course, cannot successfully be imputed to plaintiff; however, plaintiff's admitted disdain of the known conditions amounted to contributory negligence. It is to be recalled that plaintiff was one of the steel workers with authority to direct the placing and operation of the crane, and, according to his own testimony, "believed" that he had spotted the crane, or the placement of the rig. If he did not individually direct the placing of the crane, he was in an immediate position to exercise control over the matter when the probable danger was apparent. He had fully appraised the conditions and contemplated the danger connected therewith.

Finding nothing in the record that indicates negligence on the part of defendant company, but conclusive evidence showing contributory negligence, which bars plaintiff's recovery, we readily approve and affirm the action of the trial court in dismissing the action after it had fully considered all of the plaintiff's testimony. Accordingly, the judgment is affirmed.

MR. JUSTICE LINDSLEY did not participate in the consideration of this case on review.