No. 18,338.

Ruth Eddy *v.* Clifford W. McAninch.
(347 P. [2d] 499)

Decided December 7, 1959.

Mr. Eugene O. Bird, for plaintiff in error.

Messrs. Rector & Kane, for defendant in error.

*En Banc.*

Mr. Chief Justice Knauss delivered the opinion of the Court.

The parties are here in the same order they appeared in the trial court and we will refer to them as they there appeared.

Plaintiff brought the action to recover damages for personal injuries resulting when an automobile in which she was riding as a passenger collided with a car driven by the defendant at the intersection of U. S. Highway 85-87 and South Gate Road at the southern outskirts of the city of Colorado Springs. Trial to a jury resulted in a verdict for defendant. Motions for judgment notwithstanding the verdict and for a new trial were overruled and the plaintiff is here by writ of error seeking reversal.

The facts, except for the force and effect thereof, are not in dispute and appear from the record briefly as follows: The intersection of U. S. Highway 85-87 and South Gate Road is located some two miles south of Colorado Springs. The approach to this intersection from the south is down grade for a considerable distance and traffic lights control the flow of traffic so that on occasion northbound traffic on 85-87 will be halted while

southbound traffic is permitted to turn left into South Gate Road. About 9:30 p.m. on the evening of July 11, 1956, the plaintiff was a passenger in an automobile driven by one Gordon F. Bibb proceeding south on 85-87 and intending to make a left turn into South Gate Road. As Bibb was making the left turn pursuant to signal lights in his favor, the defendant traveling north on 85-87 against red signal lights holding northbound traffic, continued into the intersection striking the Bibb car near the right front and proceeded on striking a third automobile which had just entered the highway from South Gate Road. The impact of the collision threw plaintiff against the rear view mirror, injuring her neck, and against the instrument panel, injuring her leg and knee. It was shown that prior to the accident plantiff suffered from osteoarthritis, and it is said that the injuries received in this accident so aggravated that condition as to render her permanently disabled, variously estimated at one to five per cent. There is testimony that the injuries to her neck have resulted in recurring headaches requiring the wearing of a cervical collar and making it difficult for her to perform her occupation as a telephone operator. Proof was submitted of the medical and hospital expenses incurred.

Defendant frankly admitted driving through the red light and striking the Bibb car. He testified that the automobile he was driving had been in his possession but a short time — about a week. That upon the evening in question he was returning to Colorado Springs from the town of Fountain where he had been conducting mid-week services, he being a supply pastor for a small church at that place; that the traffic during the return trip was heavy and his speed did not exceed thirty-five miles an hour during the trip. Upon approaching the intersection of South Gate Road he was following a large tractor truck which stopped at the intersection in response to a red signal light; that he attempted to apply his brakes but there was no response, he then tried to

use the hand brake with the same result. To avoid striking the rear of the large truck ahead of him he turned to the right and passed the truck on that side, continued on into the intersection and collided with the Bibb car. He asserted that he had had no trouble with the brakes of the car failing to operate on the trip to Fountain or at any time during his use of the car until the moment of this accident. A Highway Patrolman who arrived at the scene within minutes after the collision stated that he tested the brakes of defendant's car and that they were not then in operating condition. The service manager of the firm from which defendant had purchased the car testified that the brakes had been inspected and were in good operating condition when the car was delivered to the defendant a week or so before the accident; that he examined and inspected them the morning following the accident and they were then in operating condition. The operator of a brake and wheel alignment establishment examined and tested them a few days after the accident and found them in good condition. Both of these witnesses stated that to the best of their knowledge no adjustment or tampering with the brakes after the accident and prior to the post-accident examination had occurred.

There was testimony that a brake failure, such as occurred here, can happen suddenly and unexpectedly from a variety of causes, such as dirt becoming lodged in a valve of the master cylinder. After a full scale hearing the jury returned a verdict for the defendant.

Plaintiff assigns as error the overruling of her motion for judgment notwithstanding the verdict, grounded on the contention that upon the evidence the defendant was guilty of negligence as a matter of law. Defendant asserts that the case was tried on the theory of unavoidable accident, and under such theory the jury was entitled to consider all of the evidence in resolving whether the accident was such as could not have been avoided

by the exercise of reasonable diligence on the part of either party.

The theory upon which the case was submitted to the jury is obscured from us by the fact that the instructions to the jury are not included in the record before us. We must, therefore, assume that they embraced all of the issues advanced by either party, and that they fully and properly advised the jury of the law applicable to the facts in evidence.

In *Alward v. Paola,* 79 Cal. App. 2nd 1, 179 P. (2d) 5, it was said: " * * * it is not within our province to weigh the evidence, and it cannot be said there is no evidence to sustain the implied finding that Mrs. Paola was not negligent." In the Alward case the defendant's car went out of control when the brakes on the car failed, and the accident occurred in which plaintiff, Alward, sustained damage. There the court had before it the instructions given the jury, and affirmed a judgment for defendant. Here we do not have the instructions given the jury.

In support of her contention that defendant was guilty of negligence as a matter of law, the plaintiff refers to C.R.S. '53, 13-4-105, relating to the required braking equipment on motor vehicles operated upon the highways of this state, and asserts that the evidence shows a violation of such provisions in that at the time of the accident both the service and hand brakes of the defendant's car were defective and that their failure to operate was the proximate cause of the collision. The cases of *Barsch v. Hammond,* 110 Colo. 441, 135 P. (2d) 519, and *Brothers v. Chatfield,* 113 Colo. 7, 154 P. (2d) 46, are cited. In the latter case it is said:

"Plaintiff had the right of way (under a municipal ordinance), and had it been yielded to plaintiff, the collision would have been avoided. Under these circumstances the defendants had the burden of reasonably explaining their negligence in failing to yield the right of way."

This falls far short of holding that violation or

non-compliance with a statute or ordinance will *invariably* constitute negligence as a matter of law. Under some circumstances the courts reserve the right to determine whether the violation of a statute or ordinance is negligence per se. Thus in *Crosby v. Canino,* 84 Colo. 225, 268 Pac. 1021, Mr. Justice Butler, speaking for the court, said:

" * * * We have held that a failure to obey an ordinance passed for the protection of the public is negligence per se. *Denver, etc. R.R. Co. v. Ryan,* 17 Colo. 98, 28 Pac. 79; *Hedges v. Mitchell,* 69 Colo. 285, 194 Pac. 620. But this is not an inflexible rule, applicable to every conceivable situation. In some circumstances, it might be negligence, even gross negligence, for a passenger, upon alighting from a street car, to 'proceed immediately to the sidewalk to the right,' as the ordinance (sec. 1980) provides; for example, if automobiles between the street car and the sidewalk to the right are moving forward, and others are rapidly approaching; or if a runaway horse is approaching the space. Or, for other reasons, a compliance with the ordinance might be impracticable, or even impossible; for example, if there is a deep excavation in the space; or if street repairers are laying hot asphalt; or if the space is occupied by automobiles or other vehicles. Traffic ordinances are to be given a reasonable construction. They should not be so construed as to require a person to do the impossible, or to take a dangerous course when an apparently safe course is open. Thus, where an ordinance requires a vehicle to be driven on the right hand side of the street, one is not per se negligent who drives to the left when the right hand side is dangerously out of repair. In such case, whether he is negligent or not depends upon whether or not he exercises due care in the circumstances. So, notwithstanding the existence of an ordinance requiring a vehicle meeting another to pass to the right, a person is not negligent per se if he turns his vehicle to the left, and thus passes a·vehicle approaching

him on the wrong side of the road in such manner as to make it impossible or impracticable to pass to the right. If, in turning to the left, he acts as a person of ordinary care and prudence would act in the circumstances, he is not guilty of negligence, otherwise, he is. The matter is thus discussed in Blashfield's Cyclo. of Automobile Law, page 1159. * * * "

The above language was quoted with approval in *Stahl v. Cooper,* 117 Colo. 468, 190 P. (2d) 891.

Mr. Justice Cordozo recognized the exception here contended for in *Martin v. Herzog,* 228 N.Y. 164, 126 N.E. 814, when he stated:

" * * * By the very terms of the hypothesis, to omit, wilfully or heedlessly, the safeguards prescribed by law for the benefit of another that he may be preserved in life or limb, is to fall short of the standard of diligence to which those who live in organized society are under a duty to conform. That, we think, is now the established rule in this state. [Citations omitted.] Whether the omission of an absolute duty, not wilfully or heedlessly, but through unavoidable accident, is also to be characterized as negligence, is a question of nomenclature into which we need not enter, for it does not touch the case before us. There may be times, when, if jural niceties are to be preserved, the two wrongs, negligence and breach of statutory duty, must be kept distinct in speech and thought. * * * "

See, also, the subsequent decision of the New York Court of Appeals, *Tedla v. Ellman,* 280 N.Y. 124, 19 N.E. (2d) 987, and see *Prosser on Torts,* 2nd ed. 159, and 2 *Harper and James,* The *Law of Torts* 1008. In the latter test the authors define the exception as follows:

" * * * In most jurisdictions, however, the negligence per se rule is administered so as to permit consideration of some factors of excuse. Courts which take a narrow view of this exception confine such factors to those showing that compliance was impossible, that the non-compliance was caused by circumstances over which the

actor had no control, or that the actor broke the criminal law in a sudden emergency not of his making. Other courts go beyond this and allow the actor's conduct to go to the jury whenever he puts in evidence that he used due care to comply with the statute. * * * "

■ The legal effect of holding that a defendant is privileged to show that a violation of a statute is beyond his control is to treat the violation as a presumption of negligence instead of as negligence *per se*. Although the record before us is incomplete, we conclude from that which is presented that the trial court proceeded on a presumption basis. Under the circumstances this was correct.

True, such non-compliance or violation may raise a presumption of negligence as in *Iacino v. Brown,* 121 Colo. 450, 217 P. (2d) 266, where the court observed:

"From the admitted facts, which are that the defendant was in control of an automobile which collided with the rear end of plaintiff's automobile without any fault whatever on the part of the plaintiff, there is a presumption of negligence to make a prima facie case."

■ For reasons no witness was able to state with certainty, defendant's brakes failed to operate at a crucial moment resulting in injury to the plaintiff through no fault of her own or of the driver of the car in which she was riding. In such circumstances the presumption arises that the failure of the brakes to operate resulted from a want of due care on the part of the defendant and in the absence of evidence sufficient to overcome such presumption, the plaintiff would be entitled to judgment.

Plaintiff's counsel states in his brief: "Plaintiff having made a prima facie case of negligence on the part of defendant, defendant has the burden to show that the accident was not caused by the negligence of defendant." We agree. However, we are unable to say that the defendant did not meet this burden. The evidence, as we have outlined it above, if believed by the jury,

was sufficient to overcome the presumption of negligence arising from failure of defendant's brakes to operate.

In *Alarid v. Vanier*, (Cal. App.), 317 P. (2d) 110, (affirmed 50 Cal. (2d) 617, 327 P. (2d) 897) a situation very similar to that before us and involving a nearly identical statute, was before the California Court of Appeals. There the defendant's brakes failed to operate resulting in a collision with another automobile which had stopped in response to a signal light. The court said:

"In the absence of evidence indicating that respondent was chargeable with knowledge that the brake was not or might not be in good condition, the brake failure might well be accepted by the jury as a sufficient excuse or justification of the violation. In the driving of automobiles such brake failures are not unknown and they frequently come suddenly, without any warning. The average driver is not a mechanical expert, and is not necessarily in a position to anticipate such mechanical failure. The essential question in such case is not as to exactly what caused the mechanical failure but is as to whether he had or should have had some prior knowledge of facts which should have led him to take proper steps in advance which might have prevented the brake failure. Unforeseen brake failure is a circumstance beyond the control of the driver in the ordinary case, and the evidence here supports the implied finding of the jury that this brake failure resulted from a cause or thing beyond the control of the respondent."

And in *White v. Pinney*, 99 Utah 484, 108 P. (2d) 249, it is said:

"If the operator or person in charge of such vehicle has done all that would be expected of an ordinarily prudent person, and a failure of his equipment occurs, not reasonably foreseen, he is not guilty of negligence."

■ In the case before us the defendant's evidence tended to prove that at the time he purchased the automobile, a week or more before the accident, the brakes

had been inspected and a certificate certifying their proper operating condition affixed to the windshield as required by the motor vehicle law; that during the time he drove the car no difficulty was experienced with the brakes and they had operated efficiently and satisfactorily up to and including that very evening on his trip to Fountain and return, and so far as he was aware, up to the moment of their failure immediately preceding the collision. Two mechanics, experienced in the repair and operation of such brakes, testified that a failure such as occurred here may happen unexpectedly and without warning.

Under the circumstances appearing from this record we think the question of whether the presumption of negligence arising from failure of the defendant's brakes to operate in accordance with the provisions of the Motor Vehicle Law, had been overcome by evidence, and that the accident resulted from causes beyond the control of the defendant, was one of fact for the jury which by its verdict resolved the issue in favor of the defendant. The judgment is, therefore, affirmed.