No. 20976.

ALAN ANDERSON v. ELSIE MUNOZ, ET AL.
(411 P.2d 4)

Decided February 14, 1966.

230

WILLIAMS and ZOOK, WILLIAM A. TRINE, for plaintiff in error.

SMITH, PYLE, JOHNSON and MAKRIS, ROGER L. SIMON, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE SCHAUER.

THE parties appear here in the same order as they appeared in the trial court and will be referred to accordingly, or by name. Humberto Munoz, husband of the defendant, was named in the complaint by virtue of the family car doctrine; however, his name does not appear in the evidence and will not be referred to herein.

Plaintiff in error seeks reversal of a judgment entered by the trial court on a verdict of a jury which found against the plaintiff on his complaint and against the defendant on her counterclaim, each claiming damages arising out of an automobile collision.

By amended complaint the plaintiff alleges that he was operating an automobile in a westerly direction on the Boulder-Denver turnpike at approximately 7:10 A.M., on October 30, 1962, and that the defendant was operating an automobile in a negligent manner by backing down the turnpike in the same lane of traffic in which plaintiff's vehicle was proceeding. This course of action caused the vehicles to collide, resulting in serious and permanent injuries to him for which he seeks damages. It is alleged that the collision occurred approximately one mile west of the Federal Boulevard overpass, on the turnpike.

By answer, defendant denied the material allegations of the complaint and affirmatively pleaded, *inter alia,* contributory negligence on the part of the plaintiff and unavoidable accident. In her counterclaim, as amended, defendant alleged that the accident was caused by plaintiff's negligence, resulting in her alleged injuries.

By reply, as amended, plaintiff denied that he was negligent and affirmatively pleaded, *inter alia,* contributory negligence on the part of the defendant.

Testimony was given by four witnesses; the plaintiff, the defendant, who was called by the plaintiff for cross-

examination as an adverse witness, a member of the state patrol who visited the scene of the accident a few minutes after the accident, and a professional photographer who took pictures of the highway. The testimony was very extensive and detailed and supported by many exhibits. We will review it as briefly as may be consistent with the nature of the case.

The following facts are uncontroverted. The accident occurred on the morning of October 30, 1962. It was a bright morning, no haze, no clouds in the sky, and the turnpike was dry and free of any obstructions or debris. We limit our discussion of the highway to that portion of the turnpike between the overpass at Lowell Boulevard and the overpass at Federal Boulevard, a distance of one speedometer mile. The view both ways from either overpass to the other was unobstructed. Adjoining the right side of the westbound lane (in which these parties were traveling) is a graveled shoulder approximately ten feet in width, its existence beyond the bridge at Federal Boulevard being known to both parties.

Both parties resided in Denver and were employed in Boulder and had commuted to and from their work over this turnpike for a period of three years. The parties were due in Boulder at 8:00 A.M., having left their respective homes in Denver a few minutes before 7:00 A.M. Both parties were traveling in the right-hand, or westbound lane. Plaintiff testified that he had been traveling at a speed of forty miles per hour and defendant testified that she had been traveling at a speed of "probably 55 to 60." Evidently the defendant reached the east approach to the Lowell Boulevard overpass, hereinafter referred to as the "bridge," at approximately the same time that plaintiff passed over the Federal Boulevard overpass. Defendant was on the east approach of this bridge, proceeding westward, when she felt a "bumping" and suspected that she had a flat tire. She "vaguely remembered" applying her brakes just a few feet from the entrance to the bridge, came to a stop,

changed gears, and, instead of proceeding in a forward direction over the bridge and parking on the shoulder to the right of the turnpike as one left the bridge, she backed her car in the same lane, the west-bound lane, and to the east for a distance of 100 yards. She was either still backing or had stopped when her vehicle was struck in the rear by plaintiff's vehicle traveling in the same lane toward the west.

Defendant gave various reasons for her actions, although her testimony is very vague in some particulars. Many things were passing through her mind during this backing operation. On account of the flat tire, she wanted to park her car for the day and flag down a car going west so that she could get to Boulder in time for her employment and then call the AAA to come out for the car. She wanted to back the car to a suitable place where she could bring it to a halt and then drive onto the shoulder in a forward direction, as she had an aversion to backing into a parking place. She was probably still backing when struck by the Anderson vehicle and at that time had expected to back still further as she had not found a stopping place to suit her. She had stopped at no place along the way to attempt a turn onto the shoulder, which she admitted was wide enough to accommodate her car. When her tire went flat on the east approach of the bridge she did not continue her forward motion for the short distance to the shoulder on the west side of the bridge because she did not want to drive that far on a "bumpy" tire, although backing her vehicle for 100 yards on this bumpy tire most likely was as damaging as proceeding forward. She admitted that she could have and probably should have backed only to the shoulder a few feet back of the bridge entrance, but did not think of it. She could give no reason why she had not seen the Anderson car approaching in her lane from the east until she had backed up 100 yards and was within 200 yards of the Anderson car. She claimed that she was watching the

traffic by means of her rear view mirror at all times, and looking back over her shoulder, probably through the back car window, at all times. When she saw the Anderson car coming, instead of stopping, or turning onto the shoulder, she continued backing an additional ten feet or more. She then stopped, changed gear and turned her wheels slightly to the right, during which space of time Anderson covered approximately 500 feet. She might have continued backing had she not seen the car approaching. These were facts properly submitted for jury determination relative to the alleged negligence on her part.

We now turn to the actions of Anderson during this period, facts upon which defendant's claim of negligence on his part are based. He was at a point between 100 and 200 yards distant from the bridge, at which time he did not realize that there was any emergency. He was not aware of the bridge, although it was within his range of vision. He saw the Munoz car in the same lane, but presumed it was traveling in the same direction he was moving. He was traveling faster than the Munoz car and there were no cars intervening. Suddenly, he realized that the distance between the two cars was closing rapidly and that an emergency had arisen requiring action. He contemplated making a left turn, applied his brakes and attempted to turn out. There was not enough time and, although he was looking directly at the Munoz car and could see only its rear end, he could not tell whether it was barely moving forward, barely moving backward, or whether it was standing still. At that moment, the collision occurred. Resultantly, he was thrown against his windshield and received the injuries related. He, nevertheless, succeeded in getting out of the car and lying down on the shoulder of the turnpike until the ambulance arrived. He testified:

"Q * * * under the circumstances that you have described in connection with the crash, the accident on

October 30, would you state whether or not you believe you could have avoided it under the circumstances?

\* \* \*

"A I don't believe I could."

He stated that if he had realized from a distance of 100 to 150 yards that the distance between the two cars was rapidly closing, he could have avoided the accident, but he did not realize it.

This was the testimony as to his alleged negligence which was submitted to the jury for its consideration.

At the close of the testimony, defendant moved for a directed verdict, both on plaintiff's complaint and her counterclaim, on the ground that plaintiff had failed to prove a prima facie case regarding defendant's negligence, and that plaintiff's negligence had been shown as a matter of law. Ruling was reserved and the record does not show whether the court ever ruled on the motion.

Plaintiff moved for a directed verdict on defendant's counterclaim on the ground that the evidence had shown conclusively that defendant had been guilty of negligence as a matter of law in backing her vehicle down the highway for a distance of 100 yards, when she had other available and safe routes to take, and that such negligence was the proximate cause of the collision. Plaintiff also moved for a directed verdict on his complaint on the ground that there had been no evidence to establish contributory negligence on his part. Ruling was reserved, and the record does not show whether the court ever ruled on these motions.

Plaintiff in error presents five arguments as grounds for reversal of the judgment. We will recite and discuss them in the same order in which they appear in his briefs.

I. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON UNAVOIDABLE ACCIDENT FOR REASON THAT THE RECORD DISCLOSES NO EVIDENCE SHOWING THAT THE ACCIDENT IN QUES-

TION COULD NOT HAVE BEEN FORESEEN AND PREVENTED BY THE EXERCISE OF REASONABLE CARE, AND IF THE FLAT TIRE INVOLVED WAS, IN LAW AND IN FACT, A SUDDEN AND UNFORESEEABLE EVENT, IT WAS NOT THE PROXIMATE CAUSE OF THE ACCIDENT.

■ It is undisputed that the flat tire was in fact a sudden and unforeseen event. The question as to whether or not it was the proximate cause of the accident was one for jury determination.

■ Anderson himself testified that under the circumstances he did not believe he could have avoided the accident. In her answer, Munoz affirmatively pleaded unavoidable accident. She was entitled to an instruction on her theory of the case, and Anderson's testimony raised the issue, which became one for jury determination. It is noted here that the trial of this case anteceded the announcement of the opinion in the case of *Lewis, et al. v. Buckskin Joe's, Inc.,* 156 Colo. 46, 396 P.2d 933.

Counsel for Anderson argue that the law is now settled in this jurisdiction that an instruction on unavoidable accident is improper in the absence of evidence showing that the accident could not have been foreseen and prevented by the exercise of reasonable care and there must be some evidence in the record showing that the accident was caused by an unforeseeable and uncontrollable event without negligence on the part of either party to the action. In his brief are cited six Colorado cases holding that the question of unavoidable accident was properly submitted to the jury for determination, to wit: *Daigle v. Prather,* 152 Colo. 115, 380 P.2d 670; *Mobley v. Cartwright,* 141 Colo. 413, 348 P.2d 379; *Eddy v. McAninch,* 141 Colo. 223, 347 P.2d 499; *Stephens v. Lung,* 133 Colo. 560, 298 P.2d 960; *Ridley v. Young,* 127 Colo. 46, 253 P.2d 433; *Iacino v. Brown,* 121 Colo. 450, 217 P.2d 266. In the case of *Parker v. Couch,* 145 Colo. 209, 358 P.2d 609, the judgment was

reversed because the instruction had not been given. In each of these cases, there was evidence that the accidents involved could not have been foreseen and prevented by the exercise of reasonable care and were thus caused by an unforeseeable and uncontrollable event. Under the pleadings of defendant, and the testimony of Anderson, the issue was raised and properly submitted to the jury. Whether or not the sudden unforeseeable and unavoidable flat tire incident was the proximate cause or one of the proximate causes of the accident, as Munoz claims, was a question before the jury and justified the giving of the instruction.

The leading case on this question, which establishes the law in this jurisdiction, is *Union Pacific Railroad Company v. Shupe,* 131 Colo. 271, 280 P.2d 1115, involving a suit for damages resulting from a collision between a locomotive and a truck. The action involved the same issues as here presented. Plaintiff sued for damages and defendant counterclaimed for its damages. There were mutual denials of negligence. From a jury verdict for plaintiff, defendant, on writ of error, asserted as grounds for reversal, *inter alia,* the refusal of the trial court to give an instruction on unavoidable accident, although such a defense had not been pleaded by defendant. In reversing the judgment the court used the following language, which is equally pertinent here and, in our opinion, is determinative of the first argument of plaintiff in error:

"* * * Under such circumstances the accident could have occurred and the damage resulted through no dereliction of duty upon the part of either plaintiff or defendant. Defendant is entitled to have this theory of law presented to the jury when the evidence supporting it is in the record.

"* * * While it is the usual practice to plead unavoidable accident as an affirmative defense, the fact still remains that *unavoidable accident is but a denial of negligence,* and in this case where the pleadings disclose

that there were mutual denials of negligence, the issue is in the case." (Emphasis supplied.)

 The concept involved herein is nothing more nor less than that the contention is made by both parties that they were not negligent or that their negligence was not the proximate cause of the accident. The giving of the instruction was not harmful to either party, as they had mutually denied negligence and each had the burden of proving the negligence of the adverse party. The question of the negligence of each was properly submitted to the jury. In this connection we note that in Instruction No. 19, to which no objection was made by Anderson, the court instructed the jury as to what findings must be made in order that plaintiff might recover from defendant or defendant might recover from plaintiff, or neither party recover from the other. The last paragraph of this instruction reads as follows:

"You are further instructed to bring in verdicts in favor of defendants and against plaintiff on plaintiff's complaint and in favor of plaintiff and against defendants on defendants' counterclaim if you find from a preponderance of the evidence that neither plaintiff nor defendant Elsie Munoz was negligent."

By failing to object, plaintiff in error admitted that if this case were a proper case to go to the jury on the complaint and counterclaim, it was within the province of the jury to find that neither party was negligent, which is tantamount to saying that it was within the province of the jury to find that this accident was an unavoidable accident.

II. THE TRIAL COURT ERRED IN FAILING TO GRANT PLAINTIFF'S MOTION FOR A DIRECTED VERDICT ON THE DEFENDANT'S COUNTERCLAIM, FOR REASON THAT THE UNCONTROVERTED EVIDENCE ESTABLISHED THE DEFENDANT'S NEGLIGENCE AS A MATTER OF LAW AND THE JURY

COULD NOT PROPERLY FIND THAT DEFENDANT WAS NOT NEGLIGENT.

The basis for this argument is C.R.S. '53, 13-4-72, which prohibits a party parking, stopping or leaving standing any vehicle upon the main traveled part of the highway, when it is practical to stop, park or leave the vehicle off such part of the highway. We call attention to the saving clause, which exonerated Munoz, to wit:

"(2) This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

The Munoz vehicle was disabled on the approach to the bridge mentioned, and her vehicle was not left parked on the highway. She made an effort to remove the car from the highway in order that the highway should not be obstructed. As soon as she realized that the tire was flat she did not stop long enough even to get out of the car, but immediately started to back to an appropriate place to remove her car from the highway. It cannot be stated that from these circumstances she was guilty of negligence as a matter of law. "Such a question of negligence is one to be resolved by the jury under proper instructions." *Parker v. Couch, supra.*

III. THE ISSUE OF PLAINTIFF'S CONTRIBUTORY NEGLIGENCE WAS IMPROPERLY SUBMITTED TO THE JURY.

We find that the jury was properly instructed on this, as well as all other issues in the case.

IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN SUBMITTING TO THE JURY AN INSTRUCTION ON "TO LOOK BUT NOT TO SEE WHAT IS PLAINLY VISIBLE IS NOT TO HAVE LOOKED AT ALL AND IS NEGLIGENCE," WHICH INSTRUCTION WAS NOT SUPPORTED BY THE EVI-

240

DENCE AND WAS MISLEADING AND PREJUDICIAL. and

V. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN SUBMITTING TO THE JURY AN INSTRUCTION QUOTING THE CRIMINAL STATUTE ON FOLLOWING TOO CLOSELY, FOR REASON THAT THERE IS NOT ONE SCINTILLA OF EVIDENCE IN THE RECORD TO SUPPORT SAID INSTRUCTION.

We see no merit in these arguments. We must assume that the jury was composed of intelligent persons, who could analyze the evidence and determine for themselves whether or not these instructions, consisting only of the citation of statutes which might possibly be applicable in a case of this kind, applied to the testimony in this case.

We find that the case was well tried on the part of both parties to the action. Each party was charged with negligence and contributory negligence and all testimony on these issues was properly presented to the jury under proper instructions as to the law in the case.

The judgment of the trial court is affirmed.

Mr. Justice Frantz and Mr. Justice Pringle concur.