**UNITED STATES of America,
Appellant,**

v.

**Shirley HASKIN, Administratrix of the
Estate of Charles D. Haskin, Deceased,
and Transco Contracting Company, Inc.,
a corporation, Appellees.**

**No. 9477.**

United States Court of Appeals
Tenth Circuit.

Feb. 23, 1968.

Rehearing Denied June 26, 1968,
en banc.

William Kanter, Attorney, Dept. of Justice (Carl Eardley, Acting Asst. Atty. Gen., B. Andrew Potter, U. S. Atty., and Morton Hollander, Attorney, Dept. of Justice, Washington, D. C., on the brief), for appellant.

Kenneth N. McKinney, Oklahoma City, Okl., for appellee Shirley Haskin.

Robert D. Looney, Oklahoma City, Okl., for appellee Transco Contracting Co., Inc.

Before WOODBURY,* LEWIS and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

The government appeals from a judgment entered by the United States District Court for the Western District of Oklahoma in an action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. Plaintiff-appellee, Haskin, was awarded $49,300 on a wrongful death claim which was based on Colorado's wrongful death statute, Colo.R.S. § 41-1-2 (1963), and $4,043.07 for hospital, medical and funeral expenses of Charles Haskin. Appellee Haskin is the administratrix of the deceased Charles Haskin's estate. By a third party complaint the government sought indemnity from appellee Transco Contracting Company, Inc. for all damages it might have to pay appellee Haskin. The court ruled that Transco was not liable to the government.

The government presents three issues for review:

(1) Whether the court erred, as a matter of law, in concluding that the government was negligent.

(2) If the government is liable, whether the court erred in awarding damages in excess of the maximum allowed under Colorado's wrongful death statute.

(3) Whether the court erred in denying the government's claim in contractual indemnity asserted against Transco.

The material facts are uncontroverted. Transco contracted with the Department of the Army for the exterior painting of buildings at Fort Carson, Colorado. The decedent, Charles Haskin, was an employee of Transco and was painting a structure 35–40 feet in height. Two electrical wires, 30.5 feet above the ground and approximately eight feet apart, ran parallel to the structure as well as parallel to each other. The wire closer to the structure was a bare high voltage wire carrying 7200 volts of electricity. The outside wire was a "neutral" or "ground" wire carrying little or no electricity. At its closest point, the high voltage wire was 4.2 feet away from the structure being painted by Haskins. At its farthest point, the wire was eleven feet away from the structure. On the other hand, the "neutral" wire was from eight feet, two inches to twelve feet, two inches away from the closest point of the building.

Haskin was working on a 40 foot aluminum extension ladder which was extended to approximately 32 feet from the ground. At noon, Transco's foreman, Ridings, stopped by the building Haskin was painting in order to give Haskin a ride to another area for lunch. Haskin climbed down the ladder and moved behind Ridings who proceeded to attempt moving the ladder to another part of the structure. As Ridings "kicked it out at the top", the ladder came in contact with the bare high voltage wire. Ridings received an electric shock and lost consciousness. There is no evidence to indicate what actions Haskin attempted, but due to contact with Ridings, the ladder, or both, Haskin sustained injuries which resulted in his death two days later.

The allegedly negligent act or omission occurred in Colorado, as did the injury and resulting death. Therefore, even though Haskin's administratrix brought this action in the judicial dis-

---

* Senior Circuit Judge of the First Circuit, sitting by designation.

trict in which she resides,[1] the action is governed by Colorado law, as is required by 28 U.S.C. § 1346(b).

 There is substantial evidence in the record to support the trial court's finding that the government was negligent. "Electricity has traditionally been considered extremely dangerous and the duty of exercising a high degree of care is placed upon those dealing with it." Pierce v. United States, 142 F.Supp. 721, 728–729 (E.D.Tenn., S.D.1955), aff'd per curiam, 235 F.2d 466 (6th Cir. 1956). The degree of care exercised must be commensurate with the danger. McCormick v. United States, 159 F.Supp. 920, 924 (D.Minn.1958). However, the government did not have to guard against possible eventualities—only probabilities. Currence v. Denver Tramway Corporation, 132 Colo. 328, 287 P.2d 967 (1955). Under the facts of this case there was a likelihood or reasonable probability of human contact with the high voltage wire. The danger should have been foreseen or anticipated; however, the evidence showed no warning signs of any kind were maintained in the immediate area where the accident occurred. No specific warnings were given to Transco or its employees. The fact the electrical wiring in other areas of Fort Carson was strung so the neutral wire was closer to the structures than the high voltage wire indicates a safer procedure could have been followed in the accident area. It is true that in constructing and maintaining its lines the government had complied with applicable safety codes; however, it is felt such compliance is not conclusive evidence of due care but is only one factor to be considered. An unsafe condition existed which, it is felt, was not obvious to the painters-invitees of the government. There was a duty to warn of that unsafe condition. Stancil v. United States, 196 F.Supp. 478, 480–481 (E.D.Va.1961).

 The facts before us make it clear the accident would not have occurred but for the negligence of the government. Moore v. Standard Paint & Glass Co. of Pueblo, 145 Colo. 151, 358 P.2d 33 (1960). It has also been recognized in Colorado that the negligence of the defendant must be a substantial factor in producing the injuries of which complaint is made, negligence alone not being sufficient to impose liability. Hook v. Lakeside Park Company, 142 Colo. 277, 351 P.2d 261, 86 A.L.R.2d 339 (1960). The government argues that under the above principles the proximate cause of the accident was negligence on the part of the foreman, Ridings, and that his acts were not foreseeable by the government.

In Eby Construction Co. v. Neeley, 344 F.2d 482 (10th Cir. 1965), this court reiterated the law of proximate cause in Colorado by stating: "Proximate cause is that which in natural and continued sequence, unbroken by any efficient, intervening cause, produced the result complained of and without which that result would not have occurred." Id. at 485. It has been recognized that before an intervening act or force will absolve the original actor of liability the act or force must be one which "could not reasonably have been anticipated and avoided * * *." Stout v. Denver Park and Amusement Company, 87 Colo. 294, 287 P. 650 (1930); Hook v. Lakeside Park Company, supra. We agree that the government could not foresee Riding's actions. Indeed, the exact nature of the bizarre facts of this case could not have been foreseen. However, there was a reasonable probability that those persons working in the area of the uninsulated wires would come in contact with them and the duty to guard against the realization of the probability could not be diminished by the unforeseeability of the exact way in which it occurred. Perhaps most important to the facts of this case, however, is the requirement that it be shown "the intervening act would have caused the injuries independently of the

---

1. Under 28 U.S.C. § 1402(b) a civil action on a tort claim against the United States must be prosecuted either "in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."

original wrong [Citation omitted.]" United States v. First Sec. Bank of Utah, 208 F.2d 424, 429, 42 A.L.R.2d 951 (10th Cir. 1953). In Stout, the court found that the proximate cause was an *"independent,* efficient cause which could not reasonably have been anticipated and avoided by the defendant * * *." 287 P. at 650 (emphasis added). However, the actions of Ridings would not have resulted in Haskin's death if the government had not been negligent.

After imposing liability on the United States, the trial court gave a judgment of $49,300 on the wrongful death claim and awarded $4,043.07 on the estate's claim for hospital, medical and funeral expenses of the decedent.

■ In actions under the Federal Tort Claims Act, damages are determined by the law of the state where the tortious act was committed. 28 U.S.C. § 1346(b); Hatahley v. United States, 351 U.S. 173, 182, 76 S.Ct. 745, 100 L.Ed. 1065 (1956). Colorado expressly limits recovery in wrongful death actions to $25,000.[2] This court has specifically held that Colorado's limitation on damages must be applied in an action brought under the Federal Tort Claims Act. Bartch v. United States, 330 F.2d 466 (10th Cir. 1964). Therefore, the recovery on the wrongful death claim must be reduced to $25,000.

■ The award of $4,043.07 for hospital, medical and funeral expenses was under Colorado's "survival statute".[3] Counsel for the government contends that funeral expenses are not recoverable under the statute but can only be recovered under the wrongful death statute. The contention is incorrect. Espinoza v. Gurule, 144 Colo. 381, 356 P.2d 891 (1960); Kling v. Phayer, 130 Colo. 158, 274 P.2d 97 (1954).

Mrs. Haskin elected to take benefits under the Colorado Workmen's Compensation Act and received an award there-under. In the subsequent action against the United States, the government filed a third party complaint against Transco seeking indemnity for all damages the government might have to pay. The government's theory was that Transco's breach of contract to insure the safety of its employees, and its fault and negligence in performing its contract work entitled the government either to contractual or tort liability. The trial court held that Transco was not liable to the United States and entered judgment accordingly.

■■ The United States could properly proceed as a third-party in this action arising under the Federal Tort Claims Act. United States v. State of Arizona, 214 F.2d 389, 391 (9th Cir. 1954). Transco contends, however, that the government is not entitled to indemnity in this case because any liability on the part of Transco was extinguished by benefits being paid under Colorado's Workmen's Compensation Act. Section 81–3–2 of the Colorado Revised Statutes (1963) provides:

"Any employer who has elected to and has complied with the provisions of this chapter, including the provisions relating to insurance, shall not be subject to the provisions of section 81–3–1; nor shall such employer be subject to any other liability whatsoever for the death of or personal injury to any employee, except as provided in this chapter; and all causes of action, actions at law, suits in equity, and proceedings whatever, and all statutory and common law rights and remedies for and on account of such death of, or personal injury to any such employee and accruing to any and all persons whomsoever, are hereby abolished except as provided in this chapter."

In Ward v. Denver & R. G. W. R. Co., the United States District Court for the District of Colorado dismissed a third-party complaint and said of the above

---

2. Colo.R.S. § 41–1–3 (1963).

3. Colo.R.S. § 153–1–9 (1963).

section: "Clearly, it expresses an intent by the Colorado legislature to render such employer immune from all liability, save that imposed by the Workmen's Compensation Act itself." 119 F.Supp. 112, 114 (D.Colo.1954). The court felt the phrase "and accruing to any and all persons whomsoever" would allow no other construction. This court reached the same result in interpreting a similar New Mexico statute. Hill Lines, Inc. v. Pittsburg Plate Glass Company, 222 F.2d 854 (10th Cir. 1955).

However, in Titan Steel Corporation v. Walton,[4] we pointed out that we had never construed the exclusionary language of comparable acts "to forbid an employer subject to the act to freely and voluntarily contract with a third party to indemnify and save him harmless for all liability arising out of the injury or death of a covered employee." We pointed out the "clear distinction between liability of a covered employer to a third party arising by operation of law and liability created wholly by independent contract." An important requirement, however, is that the release-from-negligence provision be made "without the exercise of superior bargaining power, and * * * clearly and unequivocally [express] the intention of the parties."[5]

The trial court found that the government was guilty of negligence which proximately caused or contributed to the death of plaintiff's decedent. The indemnity provision provided, "He [Transco] shall be responsible for all damages to persons or property that occur as a result of *his* fault or negligence." (emphasis added). The language does not embrace the concept of liability indemnity for the government's negligence.

The case is affirmed in part and reversed in part, and the cause is remanded for further proceedings in accordance with the rules above stated.

4. 365 F.2d 542, 549 (10th Cir. 1966).
5. Id.; United States Steel v. Warner, 378 F.2d 995, 999 (10th Cir. 1967). See Colorado Milling & Elevator Co. v. Chicago, R. I. & P. R. R., 382 F.2d 834, 837 (10th Cir. 1967).