### No. C-1093

**Federal Insurance Company, Sentinel Publishing Company, Inc., The St. Paul Fire and Marine Insurance Company, Transamerica Insurance Company, Kelley Brothers Rewind Company, d/b/a H & M Electric Motor Service, Marvin L. Miller, Wanda O. Miller, Mesa Feed & Farm Supply Co., Grain Dealers Mutual Insurance Company, Colorado Farm Bureau Mutual Insurance Co., and Insurance Company of North America v. The Public Service Company of Colorado**

(570 P.2d 239)

Decided September 26, 1977.                    Rehearing denied October 31, 1977.

Traylor, Palo, Cowan & Arnold, Charles Traylor, Davis L. McKinley, for plaintiffs-appellants, Sentinel Publishing Company, Inc., The St. Paul Fire and Marine Insurance Company, Transamerica Insurance Company, Kelley Brothers Rewind Company, d/b/a H & M Electric Motor Service, Marvin L. Miller and Wanda O. Miller, and co-counsel for Federal Insurance Company.

Cummins, White & Breidenbach, James O. White, James Robie, for plaintiff-appellant, Federal Insurance Company.

Graham & Dufford, Hugh D. Wise, for plaintiffs-appellants, Mesa Feed & Farm Supply Co., Grain Dealers Mutual Insurance Company, and Insurance Company of North America.

Kelly, Stansfield & O'Donnell, Richard W. Bryans; Younge, Hockensmith, Griffin, Robb & Rider, James M. Robb, James S. Casebolt, for defendant-appellee, The Public Service Company of Colorado.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

We granted certiorari prior to judgment in the court of appeals to review the judgment entered against appellants in favor of appellee, Public Service Company of Colorado (Public Service). C.A.R. 50. We reverse. The only issue addressed in this opinion is whether the trial court erred in

refusing to give certain jury instructions tendered by appellants concerning the standard of care by which Public Service's conduct was to be judged.

On April 9, 1974, electrical "arcing" was observed at the Mesa Feed & Farm Supply Company in Grand Junction. Public Service responded to an emergency call by sending a crew to the Mesa Feed location. Shortly thereafter, a unit of the Grand Junction fire department arrived at the scene. A Public Service supervisor told the fire chief that everything was under control. He advised the fire chief that the power to the building had been shut off and said that there was no need for the firemen to enter the building. Both the firemen and the Public Service crew then left the scene. Thirty minutes later, a fire was observed at the Mesa Feed building. Efforts to contain the fire were unsuccessful, and the fire spread to the buildings of the other appellants.

The appellants filed suit against Public Service to recover for the property damage caused by the fire. Trial to a jury resulted in a verdict in favor of defendant Public Service. After appellants' motion for a new trial was denied, a notice of appeal was filed in the court of appeals. Appellants simultaneously petitioned this court for a writ of certiorari, which was granted. C.A.R. 50, 51.

The trial court's refusal to give plaintiffs' Instructions A, B, D, and E is assigned as error. Instructions A and E were substantially similar and stated that a company engaged in furnishing electricity must exercise the highest skill and most consummate care, caution, and foresight according to the best known methods of the state of the art. Instruction B stated that an electric company is presumed to possess special knowledge and skill in electricity which it must utilize for the protection of its patrons. Instruction D stated that in determining whether a person has exercised reasonable care and caution, the jury must be aware that the required care increases as the danger increases; that when a business is by its nature perilous, as is the transmission of electricity, the duty of those conducting and supplying it is to exercise the utmost care.

Instead of instructing the jury in accordance with the tendered instructions, the trial court submitted Colorado Jury Instruction (CJI) 9:3 to the jury, which provides:

"Reasonable Care — Defined

"Reasonable care is that degree of care which a reasonably prudent person would use under the same or similar circumstances."

The following explanation was given for refusing the appellants' instructions:

"The court has refused A and B, the designated letter instructions Mr. Traylor referred to, on the grounds that the court feels that ordinary care is the proper construction when modified as in 9:3 by a reference to 'under the circumstances,' the surroundings, and that gives them a place to argue the dangerousness of the situation and the high degree of care that they

think should be exercised by a person dealing with that kind of dangerous instrumentality.

"The court feels that in adopting these instructions in C.J.I. by the Supreme Court, that they specifically recognized that they want the use of ordinary care in all these kinds of cases and did not want special standards for special utilities and, therefore, the result came out of it, namely 9:3, as what should be given."

■ Trial courts are directed to utilize the instructions found in CJI by C.R.C.P. 51.1. However, an examination of that rule makes it clear that those instructions are not to be used if they do not reflect the prevailing law.

"C.R.C.P. 51.1 Colorado Jury Instructions. (1) In instructing the jury in a civil case, the court shall use such instructions as are contained in Colorado Jury Instructions (CJI) as are applicable to the evidence and the prevailing law.

"(2) In cases in which there are no CJI instructions on the subject, or in which the factual situation or changes in the law warrant a departure from CJI instructions, the court shall instruct the jury as to the prevailing law applicable to the evidence in a manner which is clear, unambiguous, impartial, and free from argument, using CJI instructions as models as to form so far as possible."

■ CJI itself, in its "general directions for use," emphasizes that it is neither a restatement nor an encyclopedia of the prevailing law. The instructions do not, and could not, cover every possible legal principle which may be applicable in a given case. A hardworking, scholarly committee attempted to cause the instructions to reflect the prevailing law. However, the scope of the task undertaken by the drafting committee was such that not every legal rule or exception could be addressed. The trial court still has the duty to examine the prevailing law to determine whether a CJI instruction is applicable to the facts of the particular case and states the prevailing law.

Notwithstanding C.R.C.P. 51.1, Public Service insists that no error occurred, since its duty is to exercise only reasonable care as instructed. Appellants' position, as reflected in their tendered instructions, is that defendant Public Service must exercise the "highest degree of care." Both parties recognize that a series of cases decided before 1933 held electric utilities to the "highest degree of care." Public Service contends that those cases have been ignored, if not overruled.

In *Denver Consolidated Electric Co. v. Simpson*, 21 Colo. 371, 41 P. 499 (1895), jury instructions relating to the duties of a company supplying electricity were reviewed. The trial court instructed the jury in the *Simpson* case that the defendant was bound by the highest degree of care, skill and diligence in the construction and maintenance of its equipment. The court held that those instructions did not evidence prejudicial error, but stated:

"We think the court was unfortunate in attempting to draw any distinctions in the degrees of care or negligence. It would have been safer and the better practice to instruct the jury . . . that the defendant was bound to exercise that reasonable care and caution which would be exercised by a reasonably prudent and cautious person under the same or similar circumstances. In addition to this, the jury should have been instructed that the care increases as the danger does, and that where the business in question is attended with great peril to the public, the care to be exercised by the person conducting the business is commensurate with the increased danger. But, in effect, this is what the court did. Under the facts of the case, the law required of the defendant conducting, as it did, a business so dangerous to the public, the highest degree of care which skill and foresight can attain consistent with the practical conduct of its business under the known methods and the present state of the particular art. . . ."

Trial courts, in subsequent cases, did not follow the court's suggestion and continued to use the "highest degree of care" instruction. This court itself soon held that the "highest degree of care" instruction was the better instruction. *Denver Consolidated Electric Co. v. Lawrence*, 31 Colo. 301, 73 P. 39 (1903). In the *Lawrence* case, the court held that instructions which were similar, if not identical, to those given in the instant case were properly refused because they did not accurately state the law:

"[I]n number 2 the jury is told that the defendant was only bound to exercise reasonable care, and in number 3 reasonable care is defined to be such care as will be exercised by a reasonably prudent and cautious person under the same or similar circumstances. The instructions do not declare the law, as applicable to the facts of this case. . . ."

In *Lawrence*, the court concluded that the jury had been properly instructed that the defendant must exercise the "highest degree of care."

Later cases continued to uphold instructions which held those that supply and deliver electricity to the "highest degree of care." *Arkansas Valley Railway, Light & Power Co. v. Ballinger*, 65 Colo. 548, 178 P. 566 (1918); *Denver Consolidated Electric Co. v. Walters*, 39 Colo. 301, 89 P. 815 (1907); *Colorado Springs Electric Co. v. Soper*, 38 Colo. 126, 88 P. 161 (1906); *see also, Blankette v. Public Service Co.*, 90 Colo. 456, 10 P.2d 327 (1932).

Public Service insists that the cases cited no longer reflect the prevailing law which it asserts is found in CJI 9:3. In support of its position, Public Service cites *Currence v. Denver Tramway Corp.*, 132 Colo. 328, 287 P.2d 967 (1955). In *Currence*, the court stated that the defendant's duty required "the exercise of reasonable care commensurate with the dangers involved." In that case, the plaintiff, with the knowledge of the presence of high voltage wires, drove a crane into the lines, injuring himself. This court affirmed the dismissal of plaintiff's complaint on the basis that the

defendant was not negligent in failing to protect against that eventuality. The standard of care required of electric utilities, therefore, was not before the court in the *Currence* case.

■ Compelling reasons continue to exist to warrant the requirement that electric utilities conduct their business with the "highest degree of care": (1) electrical energy possesses inherently dangerous properties, (2) electric utilities possess expertise in dealing with electrical phenomena and in operating facilities for delivery of electricity, and (3) the general public is not able to recognize and guard against the dangerous potential of certain situations. Electricity has been described as a silent, deadly, and instantaneous force, and its distribution has been compared to operating a firing range or handling explosives in *Spence v. Commonwealth Edison Co.*, 34 Ill. App.3d 1059, 340 N.E.2d.550 (1975).

■ When supported by the evidence, a party is entitled to a jury instruction as to his legal theory when the instruction is consistent with existing law. *Davis v. Cline*, 177 Colo. 204, 493 P.2d 362 (1972); *Anderson v. Munoz*, 159 Colo. 229, 411 P.2d 4 (1966); *Callaham v. Slavsky*, 153 Colo. 291, 385 P.2d 674 (1963).

■ Under the circumstances of this case, prejudicial and reversible error occurred when the trial court refused appellants' tendered instructions and failed to properly instruct the jury.

Accordingly, the judgment is reversed, and the cause is remanded for a new trial.

MR. JUSTICE CARRIGAN does not participate.