**James F. CATE, and Continental Casualty Corporation, a Corporation, Plaintiffs,**

v.

**UNITED STATES of America, Defendant and Third-Party Plaintiff,**

v.

**DYNALECTRON CORPORATION, Third-Party Defendant.**

**Civ. A. No. 3229-64.**

United States District Court
S. D. Alabama, S. D.

Jan. 25, 1966.

---

Robert L. Byrd, Jr., Cunningham & Bounds, Mobile, Ala., for James F. Cate.

Vincent F. Kilborn, Kilborn, Darby & Kilborn, Mobile, Ala., for Continental Cas. Corp.

Vernol R. Jansen, Jr., U. S. Attorney, Mobile, Ala., for United States.

Paul W. Brock and Louis E. Braswell, of Hand, Arendall, Bedsole, Greaves & Johnston, for Dynalectron Corp.

DANIEL HOLCOMBE THOMAS, District Judge.

Plaintiff brings this action for personal injuries sustained while he was employed by Dynalectron Corporation for the purpose of making alterations to aircraft at Brookley Air Force Base in Mobile, Alabama. Jurisdiction is invoked pursuant to Title 28, Sec. 1346(b), 2671 et seq., U.S.C.

### FINDINGS OF FACT

The third-party defendant, Dynalectron Corporation, contracted to make certain aircraft modifications at Brookley Air Force Base. The defendant government furnished the plaintiff a two-foot high platform on which to stand while working on aircraft. The platform was portable and mounted on four swivel wheels. The plaintiff sustained his injury when the platform rolled out from under him while alighting therefrom. The platform which plaintiff was using was one of a special order, produced in haste to meet emergency aircraft repair demands in the month of August 1962. Mechanical wheel locks were not available at the time of the construction of this order of platforms, and wooden chocks were designed for the purpose of making the platforms stationary. Orders of platforms prior to and subsequent to the August order were equipped with these wheel locks. The specifications for the construction of the platforms or stands included wheel locks and some of the units provided in the August order were returned to be equipped with these locks. The defendant government was given notice of the unsafe condition of these platforms without wheel locks. The ac-

cident occurred on October 24, 1963, well over a year after the equipment had been hastily furnished with wooden chocks instead of mechanical wheel locks. The plaintiff had not checked the condition of the chocks when he came on duty on the day of the injury. The plaintiff had been on the stand at work for at least two fifteen-minute intervals before the accident occurred, and the insecure condition of the platform did not manifest itself.

### CONCLUSIONS OF LAW

The Contract Schedule provides at Part I(c) that the government would furnish "work stands (both fixed and/or portable type)". That same section also provides for maintenance by the government. The United States provided these stands which were built from their own specifications. These plans included the requirement that mechanical wheel locks be used to render the stands stable. General Provision 18, entitled "Government Property" states at sub-section (e) that the "Contractor shall maintain and administer in accordance with sound industrial practice, a program for the maintenance, repair, protection and preservation of Government Property". Pursuant to these obligations, it appeared from the testimony that Dynalectron had given the government ample notice of the unsafe nature of the work stands which they had provided under the contract.

It affirmatively appeared that the plaintiff had not checked the chocks as he came on duty. However, the fact that he had been on and off the stand prior to the accident without suspecting the insecure status of the work stand indicates that the stand was probably stationary when the plaintiff came on duty. The use of wooden chocks made the stand defective on account of the susceptibility of such chocks, especially when used only in pairs, as was the case here, to work themselves loose when subjected to normal use. Any negligence which contributes to the plaintiff's injury so as to serve as a bar to his re-

covery must be such negligence which proximately caused his injury. Hayes v. Alabama Power Co., 239 Ala. 207, 194 So. 505 (1940); Great Atlantic & Pacific Tea Co. v. Terrell, 221 Ala. 454, 129 So. 20 (1930). The failure to check the wooden blocks upon his arrival for work can not be deemed a proximate contributing cause of his injury after he had been working for a period of time on the stand. The government was therefore negligent in fulfilling its duties to maintain in proper order the equipment furnished under the contract. As to the third-party defendant, Dynalectron Corporation, adequate steps were taken by it to put the government on notice of said defect and ample time had elapsed in which correction could have been made. Dynalectron, the contractor, did not share in the fault that caused plaintiff's injury.

■■ The remaining issue deals with the contention that the contractor is under a duty to indemnify the government for any liabilities incurred in the performance of the contract. This third-party complaint does not set up an action in tort and therefore there is no attempt to claim a common-law indemnity or contribution. The action being solely based on a government contract, the local law of Alabama does not apply. Government contracts are to be construed according to general principles of contract law, rather than according to the local law of the state. Priebe & Sons v. United States, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32 (1947); Guy F. Atkinson Co. v. Merritt, Chapman & Scott Corp., 141 F.Supp. 833 (S.D.Cal.1956).

The government contends that the construction of the following provision in the contract gives rise to the right to indemnity from the contractor:

"The Contractor and each assignee under an assignment entered into under this contract and in effect at the time of final payment under this contract shall execute and deliver. at the time of and as a condition precedent to final payment under this contract, a release discharging the Government, its officers, agents, and employees of and from all liabilities arising out of or under this contract." General Provision 4(f).

It is apparent that the language quoted above does not express "beyond any peradventure of a doubt" the purpose of throwing any loss upon the indemnitor even for a fault in which the indemnitee individually shared. Mostyn v. Delaware, L. and W. R. R., 160 F.2d 15 (2nd Cir. 1947). However, the government urges that the requirement of explicit statement of intent to indemnify is no longer required under the doctrine of Ryan Stevedoring Co. v. Pan-Atlantic S.S., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1955). In that case, an employee of the contractor who had been engaged to load the ship, sued the shipowner for personal injuries sustained. It was found that the vessel was unseaworthy at the time of the injury and judgment was rendered for the plaintiff. The Court held that the contractor had warranted to the shipowner that it would perform the services of loading in a workmanlike fashion and for that reason the contractor, who had breached that warranty, must indemnify the owner of the ship. The warranty is compared to the warranty of a manufacturer under the doctrine of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916). The *Ryan* case does not apply to the facts presented by the case at bar. The theory of implied warranty under the *Ryan* doctrine was neither pleaded nor proved and, hence, the case is inapposite. The evidence failed to establish a breach by the contractor of his warranty to provide workmanlike service.

■■ The clause upon which the government relies must then stand or fall in light of the rules of general law applicable to the construction of contracts of indemnity. It is stated that "the indemnitor is entitled to have his undertaking as thus determined strictly construed, and that it cannot be extended by construction or implication beyond the terms of the contract, especially where the contract was prepared by the in-

demnitee". 42 C.J.S. Indemnity § 8b, p. 576 (1944). The contract here was written by the Government and is contained within a portion of the contract dealing with payments thereunder. "It is the general rule that where the indemnity is not contracted for from an insurance company whose business it is to furnish indemnity for a premium under a contract, but is from one not in the indemnity business and as an incident of a contract whose main purpose is something else, the indemnity provision is construed strictly in favor of the indemnitor." Thomas v. Atlantic Coast Line R. R., 201 F.2d 167 (5th Cir. 1953). See also Batson-Cook Co. v. Industrial Steel Erectors, 257 F.2d 410 (5th Cir. 1958), where it is stated that "unless the intention is unequivocally expressed in the plainest of words, the law will consider that the parties did not undertake to indemnify one against the consequences of his own negligence." Applying the foregoing principles, it cannot be said that the clause in this case, when taken in its proper context, contains positive indicia of intent to indemnify the government for the consequences of its own negligence.

## DAMAGES

The damages are therefore assessable against the government. It appears that the plaintiff, James F. Cate, has incurred $2,585.62 in medical expenses. The lost time from work amounted to 67 weeks, and the rate of pay was $1.50 per hour at 40 hours per week. The total damages for lost time from work are therefore assessed at $4,154.00. Finally, the damages from pain, suffering and mental anguish are assessed at $7,500.00. The total damages for which the government is liable are $14,239.62. It further appears that the intervenor plaintiff, Continental Casualty Company, has paid over in compensation to the plaintiff, James F. Cate, the sum of $2,181.70. The intervenor plaintiff is entitled to receive that amount from the total damages of $14,239.62 for which the government is liable.