Mary Ellen **PEMBERTON**, Plaintiff-Appellant,

v.

**PAN AMERICAN WORLD AIRWAYS, INC.**, and United States of America, Defendants-Appellees.

No. 26799.

United States Court of Appeals Fifth Circuit.

Jan. 6, 1970.

Charles M. Harris, Spessard Lindsey Holland, Jr., Crofton, Holland, Starling & Goshorn, Titusville, Fla., for plaintiff-appellant.

Edward F. Boardman, U. S. Atty., Tampa, Fla., Kendell W. Wherry, Asst. U. S. Atty., Bernard J. Zimmerman, Orlando, Fla., for defendants-appellees.

Before TUTTLE and SIMPSON, Circuit Judges, and CASSIBRY, District Judge.

CASSIBRY, District Judge.

Mary Ellen Pemberton is appealing from two judgments of the district court denying her relief for the death of her husband: (1) Judgment dismissing her complaint against Pan American World Airways, Inc., notwithstanding the jury verdict in her favor and against it for $65,000,[1] and (2) Judgment dismissing her complaint against the United States of America.[2]

Appellant's husband, William George Pemberton, was employed by Martin Marietta Company (Martin) at Cape Kennedy Space Center when a forklift which he was operating in the course of his duties overturned and fell on him on October 27, 1964, causing injuries which resulted in his death. Martin had a contract with the United States under which it was to conduct certain checkout functions on the Gemini System at Launch Complex 19 at Cape Kennedy. The United States supplied the forklift in 1962, among other equipment, for the use of Martin in carrying out the contract. Pan American World Airways, Inc. (Pan American) provided the maintenance for the Government-owned equipment supplied to Martin.

The basis of appellant's claim against Pan American is that it was negligent in the maintenance of the forklift and that negligence was the proximate cause of the accident resulting in the fatal injuries. The basis of the claim against the United States is that it was negligent in permitting a forklift, demonstrated to be defective, to continue to be used by the employees of Martin. Both claims were tried at the same time, the one against Pan American to the jury and the one against the United States to the district judge.

## I. CLAIM AGAINST PAN AMERICAN

Under the test laid down in Boeing Company v. Shipman, 411 F.2d

1. This was a diversity action under Florida's wrongful death statute, Chapter 768, Florida Statutes, F.S.A.

2. This complaint was brought under the authority of the Federal Tort Claims Act, Title 28, U.S.Code, Sec. 1346(b).

365 (5th Cir. 1969), the district court correctly granted the motion for judgment notwithstanding the verdict if, after considering all of the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion, the facts and inferences point so strongly and overwhelmingly in favor of Pan American that reasonable men could not arrive at a verdict contrary to it. On the other hand the court erred in granting the motion if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions. We have concluded that the district court erred in this case.

In response to special interrogatories the jury found that Pan American breached its contract to maintain equipment by providing, or failing to provide, maintenance and repair services for the forklift, was negligent in its maintenance and repair services provided by it for the forklift and this negligence was a legal cause of the accident in this case.[3] The district court agreed that there was evidence from which the jury could find that the accident was caused by defects in the forklift, but was of the opinion that the verdict finding that Pan American was negligent in its maintenance work on the forklift was based purely on speculation and conjecture. Crucial to this opinion was his conclusion that there was no substantial evidence to show that repair work for defects in the forklift was required of Pan American shortly before the accident.

A maintenance jacket which contained a record of all service performed by Pan American on the forklift was kept with the vehicle, but it disappeared after the accident and was not produced at the trial. There was direct evidence[4] to prove that on August 24, 1964 there was a major inspection of the forklift, adjusting of the steering, adjusting of the brakes, cleaning of the fuel system and air filter, and other services. By showing the established and customary procedure at the Complex for reporting and having repaired defective vehicles and showing that the procedure had been set in motion in this case, the appellant sought to prove that the defective forklift was reported to Pan American for repair shortly before the accident.

The established procedure[5] between Martin and Pan American for reporting and repairing defective equipment was for any employee of Martin who discovered a defect in a vehicle to report it to a Martin safety engineer; the safety engineer then listed the defects on a "red tag" bearing the warning "danger —do not use" and affixed it to the steering mechanism of the vehicle to give notice to all persons that the vehicle was defective and was not to be used until the red tag was removed; the safety engineer reported to the Martin motor pool; the motor pool wrote a work order and contacted Pan American; Pan American filled out a Vehicle and Equipment Work Order scheduling the vehicle for repair and maintenance at the beginning of the next shift after receipt of the work order; the vehicle was taken to the Pan American base repair shop and returned to the job site when the repair and maintenance was completed; Pan American notified Martin upon completion of the repair and maintenance; a safety engineer of Martin removed the red tag and the vehicle was released to Martin's employees for use on the job site.

---

3. Pemberton was found not to be guilty of any contributory negligence.

4. This consisted of the testimony of R. W. Addington, a shift foreman at the Pan American service facility, and a work order for the work performed.

5. This evidence was admitted without objection and without contradiction and the principle on which it is regarded as relevant to prove that the procedure was followed on other occasions is well understood. 1 Wigmore on Evidence, 3d ed. 1940, § 92 et seq.; Eaton v. Bass, 214 F.2d 896 (6th Cir. 1954); Mahoney v. New York Central Railroad, 234 F.2d 923 (2d Cir. 1956).

This established procedure had been set into motion 5 days to a week before this accident. Richard Tennis, a Martin employee, testified that he reported to Joseph W. Mallor, a Martin safety engineer, defects in the steering and braking mechanism of the forklift and an oil leakage problem. He saw Mallor "red tag" it to indicate it was faulty equipment not to be operated. Mallor testified that, after receipt of this report by Tennis, he affixed a red tag to the steering mechanism of the forklift, listing the defects, and notified the Martin motor pool of the red tagging, the defects and the location of the vehicle. Griffin Watkins, an employee in the Martin motor pool who routinely on Fridays checked the gas and the air in the tires of the forklift, testified that he serviced the forklift on October 23, 1964, 4 days before the accident and saw no red tag affixed to the vehicle.[6]

■ The trial judge correctly concluded, we think, that Pan American had an obligation to repair and service the forklift only upon Martin requesting repair and service. His evaluation of the evidence as proof that the obligation arose in this case we seriously question. According to him, "There was no evidence that Pan American performed any work on the forklift subsequent to August 24, 1964. There was evidence that in the usual course of business Martin did notify Pan American that the forklift had been "red tagged" and that servicing and repair by Pan American would follow such notification. However, to hold Pan American liable on the basis of what Martin employees may have done in the usual course of business would be too speculative to affix liability. * * *"

The court failed to appreciate the quality of the evidence for proof that the established procedure was adhered to in this case. When a custom or usual course of business is established and it is proven that certain acts in that custom were performed, the likelihood that all of the usual course or custom was adhered to is increased.[7] The definiteness of the customary procedure for having equipment serviced and repaired by Pan American was sufficiently established to present substantial evidence to the jurors on the question of whether it was followed in this instance. It was for them to determine, and not the court, whether it was more probable that it was followed than not followed and thus determine whether an obligation on the part of Pan American arose to repair or service the forklift. They must have concluded that the obligation did arise. Inasmuch as there was evidence from which the jury could find that the accident was caused by defects in the forklift, this defective condition of the forklift shortly after the obligation to repair reasonably permitted the inference by the jury that Pan American was negligent in the discharge of that obligation. We conclude therefore that the judge erroneously granted judgment n. o. v.[8] Upon remand the verdict should be reinstated and judgment entered thereupon.

■ Pan American makes the argument that the evidence is insufficient

---

6. Defective operation of the vehicle was attested to by two other Martin employees. Leo Walkonen operated the forklift two or three days before the accident as he recalled, and found the brakes to be inadequate for the inclined surfaces the forklift was operated on and too much "play" in the steering mechanism. James Wilson found the steering mechanism unresponsive on Thursday or Friday before the accident when he was driving the forklift down a ramp. He managed to get the vehicle to the bottom of the ramp without accident and reported the dif-

ficulty to a safety engineer who was deceased at the time of trial.

7. See note 5, supra.

8. Appellant made the additional argument that there were sufficient probative facts for the jury to find that the maintenance or repair performed by Pan American on the forklift on August 24, 1964 was negligently or improperly performed. Under our view of the substantiality of the evidence regarding Pan American's obligation as to the forklift shortly before the accident, it is not necessary to pass upon this contention.

under Florida law to demonstrate that Pemberton's death was the foreseeable result of negligence in regard to repair of the forklift, citing Cone v. Inter County Telephone & Telegraph Co., Fla., 40 So.2d 148 (1949); Conda v. Plain, Fla. App., 215 So.2d 13 (2d D.C.A.1968); General Dynamics Corp. v. Adams, 340 F.2d 271 (5 Cir.1965). The thrust of this argument is apparently that there was insufficient evidence for the jury to conclude that the malfunction of the forklift was a proximate cause of the accident. It is important to note that Pan American did not cross appeal and thereby did not challenge the jury's and the trial judge's findings that the defective forklift was a proximate cause of the accident. In any event there is substantial evidence to support a finding that the accident was caused by defects in the vehicle. As we have previously determined that there was substantial evidence from which the jury could have concluded that Pan American was negligent in discharging its obligation to repair the vehicle, a finding of probable cause would follow as a matter of course.

## II. CLAIM AGAINST THE UNITED STATES

The district judge dismissed the appellant's claim against the United States because he found that the appellant had failed to prove any negligence of any employee or agent of the Government which was a proximate cause of the accident. Appellant contends that by this holding the court ignored or overlooked three separate theories under which the United States could be held liable in this case.

■ Appellant contends first that, under Cate v. United States, 249 F.Supp. 414 (S.D.Ala.1966), the United States can be liable as an entity even if no negligence of a specific agent or employee can be proved. She argues that the United States had the duty to maintain its equipment in proper condition, that the Government made periodic inspections of the maintenance jacket for the forklift and that it should have had notice of this vehicle's history of defective brakes and steering mechanism and therefore it was negligent as an entity in not maintaining the forklift in proper working condition. The weakness of this argument is that it was not proved that a periodic inspection of the maintenance jacket would have revealed that this vehicle could not be maintained in good condition through the established procedure for repair and service between Martin and Pan American.

■ Appellant contends second that, under Emelwon, Inc. v. United States, 391 F.2d 9 (5th Cir.1958), the United States is liable under the Federal Tort Claims Act in the same manner as a private individual would be at the place where the act or omission occurred for the acts of his employees or independent contractors, and that under Florida law a private individual is liable for the consequences of a dangerous situation that he knew about in the work of an independent contractor. Admitting the validity of the theory for the purposes of appellant's argument, the court does not find evidence that the Government knew or should have known that defects existed in this vehicle which could not be remedied by the repair facilities of Pan American.

■ Appellant's third theory likewise lacks evidentiary support. She argues that, under the doctrine stated in Holstun & Son v. Embry, 124 Fla. 554, 169 So. 400 (1936), the owner of a dangerous instrumentality such as a motor vehicle who intrusts it to another is bound to exercise reasonable care to provide a safe instrumentality, and the forklift in this case was not maintained in a safe condition so that the United States should be liable. By arranging for Pan American to repair and service the equipment, the United States was exercising reasonable care to provide equipment in good condition. The evidence does not show that the Government had notice that this arrangement was not working to accomplish its purpose in the case of the forklift. Appellant has

failed to convince us that the district court erred in dismissing this claim.

Affirmed in part, reversed in part and remanded for further action consistent with this opinion.