**CROCKER–CITIZENS NATIONAL BANK, as Executor of the Estate of Dorothea O'Doan, Individually, and Rita Lorenz O'Doan, Individually, and United California Bank, as Guardian ad Litem of Craig Patrick O'Doan, a Minor, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**UNITED STATES of America, Third-Party Plaintiff,**

v.

**McDONNELL DOUGLAS CORPORATION, Third-Party Defendant.**

**Civ. No. 8990.**

United States District Court, E. D. California.

Dec. 10, 1970.

Gale & Goldstein, San Francisco, Cal., for plaintiffs.

Dwayne Keyes, U. S. Atty., Sacramento, Cal., for defendant.

## MEMORANDUM AND ORDER

MacBRIDE, Chief Judge.

Having been sued by the heirs of a fatally injured employee of McDonnell Douglas, the United States brought this third-party indemnity action against McDonnell Douglas to recover amounts it may have to expend in satisfying the employee's judgment. The parties had contracted for the construction of a rocket engine to be used in the NASA program, but the contract does not contain an express indemnity provision. McDonnell Douglas moves for a judgment on the pleadings, contending that the United States has no right to indemnity absent an express provision. For reasons which follow, I deny the motion.

### Federal v. State Law

McDonnell Douglas initially argues that state law determines whether the United States has an indemnity action against it. Since the parties did not include an express indemnity clause in their contract, it concludes that California Labor Code § 3864 [1] completely bars this third-party action. I have decided, however, that the existence of an indemnity action rests upon federal law. Consequently, Labor Code § 3864 is no bar.

For purposes of choosing state or federal law, opinions have distinguished "common law" indemnity from "contractual" indemnity. United States v. Arizona, 214 F.2d 389 (9th Cir.1954); United States v. Arizona, 216 F.2d 248 (9th Cir.1954); Guy F. Atkinson Co. v. Merritt, Chapman & Scott Corp., 141 F. Supp. 833 (N.D.Cal.1956); Cate v. United States, 249 F.Supp. 414 (S.D.Ala. 1966). The former arises by operation of law, exists independently of contract, and is said to rest on state law.[2] Contractual indemnity, on the other hand, arises from an agreement between the indemnitee and indemnitor and depends on federal law for its existence. *Guy F. Atkinson Co., supra.*

Although McDonnell Douglas recognizes this distinction, it characterizes the government's action as one for common law indemnity, apparently contending that only an express provision will support an action for "contractual" indemnity. This argument, however, misconceives the nature of an action for contractual indemnity. While such an action certainly includes an express hold-harmless provision, it also includes any indemnity action *based upon* the parties' contractual relationship. Slechta v. Great Northern Railway Co., 189 F.Supp. 699 (N.D.Iowa 1961). See also Ryan Stevedoring Co. v. Pan-Atlantic SS. Corp., 350 U.S. 124, 131, 76 S.Ct. 232, 100 L.Ed. 133, 141 (1956) and Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). The allegations in the complaint reveal clearly that the government seeks to impose liability on the basis of McDonnell Douglas' con-

1. § 3864. *Liability to reimburse or hold third person harmless on judgment or settlement.* If an action as provided in this chapter prosecuted by the employee, the employer, or both jointly against the third person results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgment or settlement in absence of a written agreement so to do executed prior to the injury.

2. As Judge Mickelson characterized the action in Slechta v. Great Northern

Railway Co., 189 F.Supp. 699 (N.D. Iowa 1961), "This latter type of indemnity is grounded upon a common liability toward the injured plaintiff and in this respect is similar to contribution. It requires no contractual relationship or duty between indemnitor and indemnitee. They are merely joint tortfeasors. Though both are at fault with respect to the injured plaintiff, if the negligence of one is passive while that of the other is active, indemnity will lie against him whose negligence is active.

tractual undertakings.[3] Whether a breach of those undertakings creates a right of indemnity in the government is properly a matter of federal law.

■ As the United States Attorney correctly points out, the "reason for the application of federal law prevails regardless of whether the government's asserted right of indemnity is based upon the express provisions of the contract or is to be implied from them." The contract was formed under the authority of federal law, the relationship between the United States and its contractors is federal in character, and the need for uniform treatment of federal contracts is apparent. State law, therefore, is wholly inappropriate. Moreover, the application of federal law to determine whether a right of indemnity inheres in the contract between the parties is consistent with the generally accepted view that federal law controls when the United States bases a claim upon its contract with the defendant. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947); United States v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970); Guy F. Atkinson Co. v. Merritt, Chapman & Scott Corp., 141 F.Supp. 833 (N.D.Cal.1956); Cate v. United States, 249 F.Supp. 414 (S.D.Ala.1966). See also 3 Moore's Federal Practice 762.

I reach the decision that federal law prevails despite the recent case of United States v. Haskin, 395 F.2d 503 (10th Cir.1968). To the extent that *Haskin* suggests that state law controls the interpretation of an express indemnity clause, it is clearly contrary to the Supreme Court's opinion in United States v. Seckinger, *supra.* I therefore decline to follow it.

*The Right of Indemnity*

■ Having concluded that federal law prevails, I now consider whether that law recognizes a right to indemnity absent an express provision. The cases discussing this issue are not in harmony and a number of decisions have flatly rejected attempts to extend the right to cases of this kind. After extensive research and thought, however, I have decided that the government's third-party complaint states a claim for indemnity.

My analysis starts with the Supreme Court's opinion in Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). In this case, an injured longshoreman recovered damages from a shipowner for failing to provide him with a safe place to work. Having satisfied the judgment, the shipowner then sought indemnity from the employer stevedoring company that had improperly loaded the cargo and created the dangerous condition. Although the parties' informal agreement did not include an express indemnity provision, the shipowner contended that the stevedoring company was nevertheless contractually obligated to re-imburse it. In language obviously pertinent here, the Court agreed with the shipowner:

> The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petition-

3. Count one alleges that death resulted from the defendant's negligence or "breach of contract", specifying in detail the particular breaches. Count two that McDonnell Douglas *agreed* that its work "shall conform to high professional stand-

ards" and that under the Walsh-Healy Act (see 41 U.S.C. § 35) it was obligated to provide safe working conditions. Count three that McDonnell Douglas obligated itself "to provide workmanlike service in the performance of said work."

er's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service.

Despite *Ryan's* strong language, McDonnell Douglas argues that the decision applies only in an admiralty or "salt water" situation. Decisions from the Fifth Circuit tend to confirm its position. See Central Stikstof Verkoopkanter v. Walsh Stevedoring Co., 380 F.2d 523 (5th Cir.1967); United States v. Seckinger, 408 F.2d 146 (5th Cir.1969), rev'd on other grounds, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970);[4] Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 420 F.2d 1103 (5th Cir.1970). Significantly, however, the *Ryan* opinion itself gives no indication that its holding is to be restricted to similar factual circumstances. The Court granted certiorari because of the "wide application" of the case, and nothing in the opinion intimates that its holding rests on the admiralty character of the case. In fact, the Court analogized its decision to the warranty of a manufacturer of goods, thus evidencing its reliance on general legal principles.

While the Fifth Circuit has limited *Ryan* to admiralty-type cases,[5] other courts have applied the decision far beyond its facts. In General Electric Co. v. Moretz, 270 F.2d 780 (4th Cir.1959),

the court found a shipper of goods to be entitled to indemnity from the carrier for personal injury damages paid to a truck driver injured by shifting cargo. In this case, the shipper had negligently loaded the truck with heavy equipment. Under certain interstate commerce regulations which the court incorporated into the parties' contract, however, the carrier owed a duty to the shipper to secure the load. Having paid the injured driver, the shipper then sought indemnity from the carrier for breach of its contractual obligations. Relying on *Ryan*, the court allowed recovery even in the absence of an express hold-harmless clause.

Similarly, in San Francisco Unified School District v. California Building Maintenance Co., 162 Cal.App.2d 434, 328 P.2d 785, a window washer sustained injuries in a fall through a defective window and recovered damages from the school district on the theory that it had failed to provide him with a safe place to work. The school district then sought indemnity from the California Building Maintenance Co., which had contracted with the district to "furnish all labor, materials, and equipment necessary to perform in a first-class manner the work outlined", and to furnish stepladders to employees washing the particular type window which caused the injury. The court upheld the jury's verdict that the failure of the maintenance company to provide its employee with a stepladder constituted negligence, and also held that this conduct amounted to a breach of contract entitling the school district to indemnity.[6] Again, *Ryan* was the focal point of the decision.

4. In footnote 22 of the Supreme Court's opinion in *Seckinger*, the Court explicitly left open the question whether the *Ryan* rationale could be applied to that case, involving non-admiralty facts.

5. In a leading Fifth Circuit opinion, Judge Rives vigorously dissented from the position of the majority limiting *Ryan* to admiralty-type cases. Halliburton Co. v. Norton Drilling Co., 302 F.2d 431 (1962).

6. McDonnell Douglas asserts that this case and others like it prompted the passage

of California Labor Code § 3864, prohibiting an indemnity action in cases such as this without an express agreement. Whether true or not, this fact does not discredit the reasoning of the court's application of *Ryan* to a non-admiralty case.

Although General Electric Co. v. Moretz and San Francisco Unified School District v. California Building Maintenance Co. apply state law, they are convincing in a federal law context. See Sutherland v. United States, 23 F.R.D. 664

The facts present here are strikingly similar to those in *Ryan* and subsequent cases applying its rationale in nonadmiralty contexts. Like the third-party defendants in those cases, McDonnell Douglas purports to have expertise in the construction of rocket engines. Additionally, its control and supervision of the construction operation affords it the best opportunity to prevent accidents. See Tebbs v. Baker-Whiteley Towing Co., 407 F.2d 1055 (4th Cir.1969). Under these circumstances, McDonnell Douglas must be held to have warranted the safe construction of the rocket.

McDonnell Douglas offers no convincing reasons why I should deny the government's right of indemnity. It argues that NASA is "well-informed" about the space program, but this fact obviously does not excuse McDonnell Douglas from its contractual obligations, express or implied. Nor do I find merit in the argument that private contractors may have to indemnify "the whole United States of America for the monumental type of damages that could result in the huge and sometimes highly dangerous projects carried on by the United States Government." It is equally unfair to require the United States to absorb the "monumental type of damages" frequently resulting from the irresponsible acts of its contractors. To the extent contractors voluntarily agree to carry out such projects safely, holding them to their undertakings is eminently reasonable.

While I have concluded that the *Ryan* principle applies here, I need not rely entirely on that decision. Unlike the stevedoring company in *Ryan* whose indemnity obligation arose as a matter of implied warranty, McDonnell Douglas expressly agreed to conduct its work in a safe manner. To deny indemnity in this case, therefore, is to relieve Mc-

Donnell Douglas of its obligation to pay damages for its breach of contract in failing to provide safe working conditions. Such a result, obviously, is totally unjustified.

For the foregoing reasons, I am satisfied that the government is entitled to indemnity. I recognize, nevertheless, that the issue is open to substantial disagreement and presents a controlling question of law. Therefore, I am granting McDonnell Douglas' request for an immediate appeal under 28 U.S.C. § 1292(b). In the interests of all parties, however, I do not stay either the main or the third-party action pending the appeal.

It is so ordered.

---

(E.D.N.Y.1959) and Fisher v. United States, 299 F.Supp. 1 (E.D.Pa.1969) recognizing the *Ryan* doctrine outside of admiralty in federal law cases. These opinions reveal that *Ryan* is not inher-

ently limited to admiralty situations. Moreover, it is fundamental that federal judges fashioning federal law may find guidance from state decisions. Clearfield Trust Co. v. United States, *supra*.