## No. 8631.

### NICHOLS v. ORR, ET AL.

1. ATTORNEY AND CLIENT—*Client entitled to settle action.* The law favors the settlement of litigation. Any agreement which assumes to deprive the litigant of the control of his case, before final determination, is against public policy, and void. The statute giving the attorney a lien for his fees does not defeat this right. Upon a fair settlement by the client, not intended to defeat the claim of the attorney, the most the attorney can claim is to share in what the client obtains, or becomes entitled to by the settlement.

2. *Contract of attorney and client construed.* A firm of attorneys contracted to prosecute an action for fifty per cent. of the amount of the claim, "whether obtained by suit or compromise." The agreement authorized them to compromise, for an amount satisfactory to the client, but imposed no limitation upon the client in that respect. *Held* that the contract had not the effect to constitute the attorneys equitable assignees of the judgment recovered by their efforts, or of an interest therein, that the client was still entitled to compromise his demands without the consent of the attorneys, and without consulting them, even for a sum which, to his knowledge, they had rejected, and that the attorneys were entitled to no more than the moiety of what was obtained by the client's settlement.

3. FRAUD—*Evidence.* A firm of attorneys agreed with their client to prosecute his claim for fifty per cent. of what might be obtained by suit or compromise. They secured a judgment for over $4,000. A settlement of the claim by the client, without notice to his attorneys, for a sum which as he knew the attorneys had rejected, one-half of what was obtained being left in the hands of the adversary party, tendered to the attorneys, *held* to afford no evidence of fraud or collusion.

*Error to El Paso District Court, Hon. John W. Sheafor, Judge.*

*En Banc.*

Mr. W. E. CLARK, for plaintiff in error.

Messrs. ORR, ROBINETT & MASON, *pro se.*

Opinion by Mr. Justice Teller.

THE defendants in error were attorneys for one Katres in an action in which they obtained a judgment against the plaintiff in error in the sum of $4,250. They served upon the defendant in that suit, and upon his attorney, notice of an attorney's lien claim, including a statement that their services were rendered under a written contract by which they were to receive one-half of the amount of claim obtained by suit, or compromise. The defendant brought the case to this court on error, and an application was made for a supersedeas, and a brief filed in support thereof. In the meantime there was some correspondence between the attorneys, in which the attorneys for the plaintiff were informed that the defendant would pay $1,500, and no more, to plaintiff, in settlement of the case. This offer was rejected by the attorneys. A few days after the docketing of the case in this court Katres, the plaintiff, appeared at the office of the attorney for defendant Nichols, and the case was settled. Thereupon a release was prepared, which plaintiff executed, by which he received $25.00, the amount of costs paid by him, doctor's bills and hospital bills to the amount of $250, were paid, and he received in addition the sum of $500.00. The release further provided that $750.00,

one-half of the agreed sum to be paid in settlement of the suit, should be paid to the attorneys for plaintiff.

Defendants in error refused to accept said sum. Later they caused the writ of error to be dismissed, upon the ground that the judgment had been settled. 57 Colo. 476, 140 Pac. 792. They then began an action against Nichols to recover one-half of the amount of said judgment. Judgment was entered in their favor for $2,125, the court finding that the plaintiffs had, by virtue of said contract of employment, become equitable assignees of one half of the judgment, as soon as it was rendered; and further that the act of settlement by defendant, who had knowledge, of said contract, "constituted collusion and fraud in law on the part of defendant as against the rights of the plaintiffs to a lien upon said judment."

Error is alleged in said findings and judgment. The grounds urged for reversal are that, it being still uncertain what the result of the litigation would be, Katres had the right to settle the case, whether or not the attorneys consented to such action that he did so settle it, and that the amount due to the attorneys under their contract with him was tendered to them.

The law favors the settlement of litigation, and any agreement which deprives a litigant of the right to control his case, before it is finally determined, is void as against public policy: 6 C. J. 789, and cases cited. This right is not subject to the statutory lien of attorneys for their fees, so as to defeat the exercise of it. The most that an attorney can claim is to share in the proceeds of the settlement. *Standidge v. Chicago Rys. Co.*, 254 Ill. 524, 98 N. E. 963, 40 L. R. A. (N. S.) 529, Ann. Cas. 1913 C. 65.

For the defendants in error it is contended that their contract of employment gave them an equitable interest in the judgment, as the trial court held.

The contract provided that they should receive for their services "50 per cent of the amount of said claim, whether the same be obtained by suit or compromise." It further provided that they might "compromise said claim for such

an amount as shall be satisfactory to both parties hereto."

It will be observed that no attempt was made to limit a settlement to such an amount as might be satisfactory to the attorneys. In other words, the attorneys could not compromise the case without the consent of the client, but there was no such restriction on him in the attorney's favor. In support of the proposition that they were equitable assignees of a portion of the judgment, defendants in error cite several cases, only one of which, for reasons hereinafter appearing, need be considered. That one is *Bell v. Lake County,* 26 Colo. App. 192, 141 Pac. 861. That case involved the fee which the holder of a judgment had agreed to pay for its collection. The judgment debtor had notice of the contract by which the attorney was to have twenty per cent of the judgment for his services in collecting it. The judgment had been affirmed in this court. The parties were, therefore, dealing with a specific fund, a liquidated sum; and a contract to give a percentage of it might, if such were the fair import of its meaning, properly be held to constitute an equitable assignment of that percentage. We must assume that the contract thereunder consideration was of that character; but the statement in the opinion that a contract between client and attorney for payment out of a judgment "recovered or to be recovered" operates as a binding equitable assignment, is too general and cannot be accepted. It is said in the opinion that such a contract creates a lien upon the specific fund, which contradicts the statement that it amounts to an assignment. A lien is a *charge upon* property; while an assignment creates an *interest in* property. In the one case the property can be conveyed subject to the lien; in the other case the portion assigned can be conveyed only by the assignee, who is a co-owner with the assignor.

Until there is a final determination of the litigation, the client is, as we have seen, able to control the suit, and settle the case. That being so, his agreement that the attorney shall have a share of the fruits of the action cannot be held to amount to an assignment of such share. Thus

to hold is to deprive the client of a right, which on grounds of public policy, he is not allowed to contract away. The law gives a lien *on* and not an interest *in* the demand in suit, or the judgment rendered therein. In *Fillmore v. Wells,* 10 Colo. 228, 15 Pac. 343, 3 Am. St. 567, this court said: "The attorney's lien whether under the statute or at common law, is equitable in its nature. * * * It is not property *in* the thing, which gives a right of action at law. It is a charge *upon* the thing, which is protected in equity."

In *B. & C. S. Co. v. Pless,* 9 Colo. 112, 10 Pac. 652, this court said: "The statutory lien is a security, of the benefit of which the attorney may or may not avail himself."

This is the holding in other jurisdictions. In *Fischer-Hansen v. Bklyn. Heights R. R. Co.,* 173 N. Y. 492, 66 N. E. 395, in discussing the attorney's lien law, the court said:

"But did the legislature, in its effort to protect attorneys, intend to sacrifice the client by preventing him from making an honest settlement of his own cause of action? Did it mean to overturn the ancient and honored rule of law that settlements are to be encouraged, by giving the attorney power to insist that the litigation must continue until he consents that it should stop? Did it intend to so tie the hands of the client that he could not settle his own controversy without the permission of his attorney? A cause of action is not the property of the attorney but of the client. The attorney owns no part of it, for a lien does not give a right to property, but a charge upon it. As it is merely incidental and for the purpose of security only, it would be unreasonable to hold that the legislature intended it should be the means of blocking an honest and genuine adjustment of controversies. We think the lien is subject to the right of the client to settle in good faith without regard to the wish of the attorney, and we so held in the *Peri* case where we declared that 'the existence of the lien does not permit the plaintiff's attorney to stand in the way of settlement.' The right of the parties to this

settlement is absolute, and the settlement determines the cause of action and liquidates the claim."

To the same effect are the following cases: *In Re Baxter & Co.*, 154 Fed. 22, 83 C. C. A. 106; *Sutton v. Chicago Ry. Co.*, 258 Ill. 551, 101 N. E. 940; *O'Connor v. St. Louis Transit Co.*, 198 Mo. 641, 97 S. W. 150, 115 Am. St. 405, 8 Ann. Cas. 703; all of which hold that in making settlement the lien of the attorney must be taken into consideration, and his share of the sum received be given him. In the Illinois case above cited, the court said:

"The Attorney's Lien Act in nowise deprives a plaintiff of the complete control of his action. In case of a settlement the only right that an attorney with such a contract has, is to insist that his lien attach to the amount agreed to be paid his client in the settlement."

Such settlement must, however, be made in good faith, and without purpose to defeat the attorney's claim.

It is urged that because of the finding of fraud by the trial court the case does not come under the authorities cited. Counsel rely on *Desaman v. Butler Bros.*, 118 Minn. 198, 136 N. W. 747, Ann. Cas. 1913 E. 642, to support the finding of collusion and fraud. In that case the plaintiff had recovered a judgment of $3,000, of which the attorney was, by contract, entitled to one half. While an appeal from that judgment was pending, the defendant, according to the court's statement, "sought out plaintiff, and sent him from Duluth to an attorney at Chicago, and, unknown to both this applicant and to defendant's attorney of record, settled by paying plaintiff $700.00, and obtained a stipulation dismissing the appeal and the case, without costs to either party."

In the case at bar it is undisputed that the plaintiff came from Colorado Springs to Denver, of his own volition, went to the office of the defendant's attorney, and announced that he wished to settle the case. One half of the sum to be paid in settlement was reserved for and subsequently tendered to the attorneys. This was in strict accord with their contract which gave them one half

of the amount of the claim, "whether obtained by suit or compromise." This language, considered in the light of the law which gives the client the right to compromise the claim, affords no basis for a claim of more than one-half of such sum as Katres saw fit to accept. The only ground for complaint is that the settlement was made in the absence of the attorneys for plaintiff. Assuming, as we properly may, that the offer of $1,500 in settlement was rejected by defendants in error after consultation with their client, it follows that Katres knew that such sum and no more, would be paid, and that his attorneys would not consent to its acceptance. Coming, as he did, to defendant's attorney, without notice to his attorneys, indicates that he was willing to accept the offer of $1,500, and he did not think best to have his counsel present. Defendant's attorney also knew that Katres' attorneys would not approve the settlement; and unless it be held that they had a right to be present so as to dissuade their client from accepting defendant's offer, no blame attaches to anyone for the settlement in the absence of the attorneys.

The case of *Curtis v. Metropolitan St. Ry. Co.*, 118 Mo. App. 341, 94 S. W. 762, presents somewhat similar features. The attorneys had perfected, by notice, a lien for one half the amount recovered by suit or compromise. A judgment was obtained for $1,000.00. While a motion for a new trial was pending, the defendant paid the plaintiff $200.00, secured written direction for the dismissal of the cause, and assumed the discharge of the attorneys' lien. The court rejected the contention, made also in this case, that on the entry of judgment the attorney's fee became liquidated, and that the attorney became an equitable owner of one half of the judgment. It was pointed out that such a result followed only when the litigation had been finally closed, and the ability to collect the judgment in full was beyond question. The Missouri statute provides that the lien "cannot be affected by any settlement between the parties before or after judgment."

The court said:

"In the statute before us we find no provision for the liquidation of the amount of the attorney's fees by the mere rendition of a judgment that does not end the litigation. The statute preserves the lien, but the liquidation of a contingent fee does not occur until the final end of litigation, or until the making of an honest settlement by the parties.   *   *   *

But it is urged that the settlement was not honest, because plaintiff's attorneys were ignored. A settlement made by the parties for the purpose of defrauding the attorneys out of the whole or a part of their lien would be · brushed aside and disregarded; but the statute does not, directly nor inferentially, abrogate the ancient rule, universally followed, that not only permits, but encourages parties litigant to meet and adjust their differences, either with or without the presence and aid of their attorneys. A party, for various reasons, may prefer not to have his attorney present during the compromise negotiations, and may even prefer not to consult with him about them. He may think that the presence of an attorney would have a bad effect upon his adversary and thereby interfere with the success of the negotiations. Many attorneys are far abler in advocacy than in compromise. Or, he may fear that his attorney might attempt to dissuade him from his purpose to settle and succeed in turning him from a course which he desires to pursue.

The relation of client and attorney is analogous to that of principle and agent, and, as the cause of action is the property of the client, and the right to dispose of it is exclusively his, he must be left free—so long as he acts within the bounds of good faith—to exercise his own judgment in the compromise of his demand and in determining when and for what purpose he will invoke the aid of his attorney."

It was accordingly held that the attorneys were entitled to recover $200.00 from the defendant in the original action. The court found there was no fraud in the settle-

ment, the plaintiff receiving an amount satisfactory to her, and the lien of the attorney being recognized.

The case at bar, is very different from the Desaman case in that the settlement was not initiated by the defendant, it was made by defendant's attorney of record at the instance of the plaintiff, and it recognized the lien of plaintiff's attorneys for one half of the amount paid. Under the facts disclosed by the record we cannot say that Katres might not in good faith have preferred, as is suggested in the foregoing quotation, to conduct the negotiations himself without the aid of or interference by his counsel. The recitals in the release indicate that he was dissatisfied with the contract, and that he would not be disposed to depend further on his attorneys.

We cannot agree that the settlement was fraudulent or collusive. The conclusions above stated are in accord with the views expressed in the case of *Gooding & Wessels v. Lyon* (No. 8598), 166 Pac. 564, recently decided.

The plaintiffs are entitled to recover $750.00, but since that sum was tendered them, they should pay the costs in both courts.

The judgment will be modified accordingly and affirmed.

*Affirmed.*