**BOETTCHER DTC BUILDING JOINT VENTURE, Plaintiff–Appellant,**

v.

**FALCON VENTURES, and Harmon Wilfred, Defendants–Appellees.**

**No. 86CA1096.**

Colorado Court of Appeals,
Div. VII.

Sept. 22, 1988.

Kelly, Stansfield & O'Donnell, Timothy J. Flanagan, Charles Carpenter, Denver, for plaintiff-appellant.

Wood, Ris & Hames, P.C., F. Michael Ludwig, Clifton J. Latiolais, Jr., Denver, for defendants-appellees.

CALVERT *, Judge.

Boettcher DTC Building Joint Venture (Boettcher), lessor, brought suit against leasing agents, Falcon Ventures and Harmon Wilfred (defendants), alleging a breach of fiduciary duties and tortious interference with contractual relations between Boettcher and one of its tenants. The trial court entered judgment on a jury verdict in defendants' favor, and Boettcher appeals. We affirm.

Defendant Wilfred, a partner in the real estate brokerage firm of Falcon Ventures, contacted Boettcher on behalf of a client, Landmark Associates (Landmark), which

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1987 Cum.Supp.).

was interested in leasing office space in Boettcher's building. Because Boettcher had an exclusive listing with another brokerage firm, Wilfred represented Boettcher in the transaction as a cooperating broker.

In January of 1983, Landmark executed a sixty-eight month lease with Boettcher, and Boettcher paid defendants a commission. Shortly thereafter, Landmark began negotiating with Boettcher for additional lease space. While these discussions were still under way, Landmark contacted Wilfred to inquire about the availability of lease space in other buildings. Wilfred was then under contract as a leasing agent for another commercial lessor, Financial Plaza.

In January of 1984, after Boettcher and Landmark failed to reach agreement on additional office space, Wilfred facilitated a lease between Landmark and Financial Plaza. Landmark thereafter vacated its premises at the Boettcher Building and defaulted on its lease agreement.

## I.

Boettcher first contends that the trial court erred in instructing the jury concerning the scope of the fiduciary relationship between a real estate leasing agent and a lessor. Boettcher argues that defendants were under a continuing duty of loyalty to Boettcher during the term of the lease. We reject this contention.

When an agent is employed for the performance of a particular task, the agency terminates on the performance or completion of that task, absent an express or implied agreement to the contrary. *See Clinkenbeard v. Central Southwest Oil Corp.*, 526 F.2d 649 (5th Cir.1976); Restatement (Second) of Agency § 106 (1958). Upon termination of the agency, an agent owes a continuing duty not to use or disclose confidential information obtained during the course of the agency. However, the remaining fiduciary obligations which arose during the agency, including the duty of loyalty, no longer exist. See Restatement (Second) of Agency § 396 (1958). Thereafter, an agent is free to act in ways that might otherwise be adverse to his for-

mer principal. *See Clinkenbeard, supra; Hardy v. Davis*, 223 Md. 229, 164 A.2d 281 (1960).

Here, Boettcher concedes that Wilfred functioned as a special agent and there is no contention that he misappropriated confidential information. Furthermore, there was no evidence that the parties agreed, expressly or impliedly, that Wilfred's duties or fiduciary obligations would extend beyond his performance as a cooperating broker in the Landmark transaction. Accordingly, the agency relationship between the parties terminated upon the execution of the Landmark lease in January 1983, and there was no continuing duty of loyalty after that date.

Boettcher's reliance on *McKinney v. Christmas*, 143 Colo. 361, 353 P.2d 373 (1960), and *Wheeler v. Carl Rabe, Inc.*, 198 Colo. 311, 599 P.2d 902 (1979), is misplaced. In both *McKinney* and *Wheeler*, the object of the special agency had yet to be accomplished when the breach of fiduciary duties occurred. Moreover, in *McKinney* the parties had expressly agreed that the agency relationship would extend beyond the real estate closing and include post-sale collection of funds.

## II.

Boettcher next contends that the jury instructions pertaining to intentional interference with contract varied impermissibly from the instruction approved by our supreme court. We disagree.

Under C.R.C.P. 51.1, a trial court is required to modify jury instructions to reflect changes in the law. See *Federal Insurance Co. v. Public Service Co.*, 194 Colo. 107, 570 P.2d 239 (1977). With regard to tortious interference with contract, our supreme court has adopted the approach taken by the Restatement (Second) of Torts § 766 (1977), *See Trimble v. City & County of Denver*, 697 P.2d 716 (Colo.1985); *Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.*, 690 P.2d 207 (Colo.1984). This approach requires a claimant to establish that the interference with contractual rights was

both intentional and improper. Further, the determination of whether an interference was improper depends upon a consideration of the factors set forth in Restatement (Second) of Torts § 767 (1977).

We conclude, as did the trial court, that CJI–Civ. 2d 24:1 (1980) had not been revised to reflect the holdings in *Memorial Gardens, Inc.* and *Trimble.* Because the instructions given here correctly set forth both the elements of the tort and the factors to be considered in determining impropriety, the instructions correctly stated the prevailing law and there was no error.

### III.

Boettcher next contends that the trial court erred in permitting a witness for the defense to testify as an expert in real estate law. We disagree.

The trial court has broad discretion in determining both the qualification of expert witnesses, *People v. Jiminez,* 187 Colo. 97, 528 P.2d 913 (1974), and the scope of expert testimony, *People v. Davis,* 187 Colo. 16, 528 P.2d 251 (1974), and its ruling on such matters will not be disturbed absent a clear showing of abuse.

Here, we perceive no abuse of discretion. The record indicates that the witness was amply qualified as an expert on real estate law and standards of practice applicable to the profession. In addition, the trial court effectively controlled the scope of the examination and thereby ensured that the witness did not improperly testify concerning the ultimate issues of law before the court. Moreover, we agree with defendants that much of the expert's testimony was an appropriate and permissible response to the opinions previously stated by Boettcher's expert witness.

### IV.

We disagree with Boettcher that the trial court erred in admitting into evidence certain correspondence between Landmark and Boettcher. The contested documents were properly admitted under CRE 803(3) to show Landmark's intentions and state of mind. *See Morrison v. Bradley,* 655 P.2d

385 (Colo.1982). This evidence was relevant to a consideration of whether defendants intentionally and improperly caused Landmark to breach its agreement with Boettcher. See Restatement (Second) of Torts § 766 (1979). Furthermore, because the documents were admitted for this limited purpose—and were not admitted to vary or contradict the terms of the written lease agreement—there was no violation of the parol evidence rule.

Judgment affirmed.

PIERCE and STATLER,[*] JJ., concur.

