In re APEX OIL COMPANY,
et al., Debtors.

APEX OIL COMPANY,
et al., Appellants,

v.

CLARK OIL & REFINING
CORPORATION,
Appellee.

No. 91–2833.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1992.

Decided March 6, 1992.

Richard Ahrens, St. Louis, Mo., for appellants.

Alan Salpeter, (Howard Roin and Lynn Thesing, on brief), Chicago, Ill., for appellee.

Before BOWMAN and WOLLMAN, Circuit Judges, and WOODS,* District Judge.

HENRY WOODS, District Judge.

## I. BACKGROUND

This bankruptcy appeal revolves around the sale of assets from Apex Oil Company (hereinafter "Apex") to Clark Oil & Refining Corporation (hereinafter "Clark") in a post-bankruptcy agreement. By terms of the agreement, the purchase price would be an amount which would leave Apex with $15,000,000 in closing retained working capital (hereinafter "CRWC") to operate the businesses retained by Apex. Even

---

* The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

though the $15,000,000 figure referred to the retained capital at the time of closing, the parties recognized that the exact amount of retained capital could not be determined on that date. Therefore, they agreed that Apex would make a good faith estimate at the time of closing, then, within 30 days (later extended to 60 days by the parties), submit to Clark a financial statement indicating the CRWC. Clark would have 30 days to accept or contest Apex's calculation of the CRWC. When the parties arrived at the final CRWC figure, if the estimate was low, then Apex would refund Clark the difference. Conversely, if the estimate turned out to be high, Clark would pay Apex the difference.

Apex submitted its financial statement, which was not signed by its accounting firm (Arthur Andersen). Clark did not accept the statement of CRWC in writing, as called for by the Agreement. The financial statement indicated that Clark had overpaid Apex by several million dollars.

Subsequently, in its Chapter 11 reorganization plan filed with the bankruptcy court, Apex failed to address the debt owed to Clark for its overpayment of CRWC. Clark filed an objection to Apex's plan on that basis. Clark also filed a claim in the amount of $7,014.382.98 plus interest for the working capital adjustment.

Prior to the hearing on Apex's plan, the bankruptcy judge on April 5, 1990 set a hearing for April 19, 1990 to deal with the Clark objection and claim. The crux of Apex's argument on appeal is that it was not given sufficient notice that the hearing on the Clark objection would result in a final determination of the amount owed. Apex claims that this lack of notice amounted to a denial of due process.

The bankruptcy judge held the hearing previously noticed and found that Apex owed Clark a total of $7,709,414.56, which included interest on its claim. Apex appealed to the district court,[1] asserting three grounds:

(1) the Bankruptcy Court violated Apex's right to due process because the Court did not give adequate notice that the hearing below would finally determine Clark's claim; (2) Clark failed to prove its claim by a fair preponderance of the evidence; and (3) the Bankruptcy Court erroneously excluded the testimony of a witness for Apex who had personal knowledge about the claim.

(Add. 20). The district judge affirmed the bankruptcy court. In its appeal to this court, Apex raised only issues (1) and (3), *supra*. We affirm.

## II. LACK OF NOTICE

■ The bankruptcy court on April 5, 1990, set a hearing on the Clark claim for April 19, 1990. After conferring with counsel on April 19, regarding preliminaries, the actual hearing began on April 20. Counsel for Apex contended that its understanding was that the hearing was to be confined to an estimate of Clark's claim for the purpose of posting security. The Clark counsel's understanding of the hearing was that it would be final, providing the court accepted the first Arthur Andersen report.

Regardless of the understanding of counsel, it is clear that the bankruptcy judge intended to dispose of the Clark claim with finality. At the outset he informed the parties that the hearing would be "treated as a liquidation of [Clark's] post-petition 507A claim." (App.III: Tr. Apr. 20–21, 1990 at 5). He added:

By agreement of the parties, this hearing will be conducted as an estimation of the claim, and that amount will be liquidated for purposes of treatment under the plan.

*Id.* After the opening statements by Clark's counsel, the bankruptcy judge stated: "What we'll do ... today and tomorrow [is] liquidate the claim by process of estimation." (App.III, Tr. Apr. 20–21, 1990 at 11). During closing argument the bankruptcy judge stated that he would "decide

1. The Honorable William L. Hungate, United States District Judge, Eastern District of Missouri, Eastern Division.

today or whenever the amount of money that is due Clark." (*Id.* at 381).

Such categorical statements by the trial court drew no objection from counsel for Apex. Indeed at the close of Clark's case, he moved "to have the claim disallowed." (*Id.* at 263). Here the court in no uncertain terms told the parties before, during, and after the hearing that he planned to rule on Clark's claim. There was no objection by either party. Under these circumstances, there was no denial of due process. *See McGraw–Edison Company v. Central Transformer Corporation*, 308 F.2d 70 (8th Cir.1962); *In the Matter of Muller*, 851 F.2d 916, 919 (7th Cir.1988), *cert. denied, sub nom., Roger v. First Nat. Bank of Peoria*, 490 U.S. 1007, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989); *In the Matter of Georgetown Apartments*, 468 F.Supp. 844, 851 (M.D.Fla.1979).

### III. EXCLUSION OF THE TESTIMONY OF AN APEX WITNESS

The district court found that "[i]t is uncontested that the parties agreed to identify their witnesses and to make them available prior to trial." (Add. 31). On the last day of trial, Apex attempted to call Joseph Catanzaro, who had not previously been disclosed as a witness. Apex tried to avoid the agreement by claiming that Catanzaro was a rebuttal witness.

The bankruptcy court sustained an objection to this testimony for three reasons, which were summarized by the district judge as follows:

(1) [T]he agreement among counsel to disclose witnesses prior to trial; (2) even if that agreement did not pertain to rebuttal witnesses, Mr. Catanzaro does not qualify as a rebuttal witness; and (3) "[s]ince the decision to ... use ... [Mr. Catanzaro] as a rebuttal witness was made after Mr. Melnuk's testimony ... it is greatly unfair that the decision ... [was not communicated sooner]." (App. III, Tr. (April 20, 1990) at 268).

(Add. 32).

■ We agree with the district court that the assertion of error is without merit. The proffer of this witness was a clear violation of the agreement by the parties. The bankruptcy judge did not abuse his discretion in excluding his testimony. *Gossett v. Weyerhaeuser Co.*, 856 F.2d 1154, 1156–57 (8th Cir.1988).

■ Neither do we find error in the ruling by the bankruptcy judge that Catanzaro was not a proper rebuttal witness. Apex claimed that he was needed to rebut the testimony of Clark's witness Melnuk. Apex knew or should have known the content of Melnuk's testimony because his deposition was taken three days before trial. In *Smith v. Conley*, 584 F.2d 844, 846 (8th Cir.1978), this court noted that "[p]laintiff can make no reasonable claim of ignorance as to defendant's theory." Thus, responsive testimony was excluded as improper rebuttal evidence. The exclusion of rebuttal testimony was also held proper where the testimony should have been elicited during the case in chief. *Gossett v. Weyerhaeuser Co., supra.* "[A] defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness,' or anything analogous to one." *Newman v. A.E. Staley Mfg. Co.*, 648 F.2d 330, 333 n. 2 (5th Cir.1981), quoting *Morgan v. Commercial Union Assurance Co.*, 606 F.2d 554, 556 (5th Cir.1979). The bankruptcy court's decision that it would have been unfair to have permitted the Catanzaro testimony was not unreasonable. Catanzaro was not brought forward until the witness he was supposed to rebut had left for Canada. (App.III, Tr. Apr. 20–21, 1990 at 270–71).

The judgment is affirmed.