**George JONES, Plaintiff–Appellant,**

**v.**

**FEIGER, COLLISON & KILLMER, Defendant–Appellee.**

No. 93CA1709.

Colorado Court of Appeals,
Div. V.

Dec. 29, 1994.

As Modified on Denial of Rehearing
Feb. 2, 1995.*

Certiorari Granted Sept. 11, 1995.

* Ruland, J., would grant rehearing petition of defendant-appellee.

Gersh & Danielson, Miles M. Gersh, James S. Helfrich, Denver, for plaintiff-appellant.

Kennedy & Christopher, P.C., Elizabeth A. Starrs, Ronald H. Nemirow, Denver, for defendant-appellee.

Opinion by Judge BRIGGS.

Plaintiff, George Jones (client), appeals the judgment entered on a jury verdict in favor of defendant, Feiger, Collison & Killmer, his former attorneys (law firm). The jury found against the client on his claims of breach of contract and fiduciary duty and for the law firm on its counterclaim for legal fees. We affirm the judgment against the client on his claims against the law firm. However, because we conclude that certain provisions of the representation agreement between the client and the law firm are unenforceable, we reverse the judgment on the counterclaim awarding the law firm as damages the fees it claimed pursuant to the representation agreement and remand for a new trial to determine the reasonable value of the law firm's services.

## I.

The client engaged the law firm to render legal services in connection with the client's allegedly wrongful termination from employment as an executive for an investment company. The parties entered into a representation agreement, which established a reduced hourly rate and contingency fee schedule for representation.

The agreement provided in regard to settlement:

> The law firm is not to settle any of the client's claims without the consent of the client. The client agrees to consider seriously any recommendation of settlement that the law firm makes. The client agrees not to refuse unreasonably to settle his claims should such an opportunity arise.

Another provision stated in pertinent part:

> The law firm shall have the right to withdraw ... for any other justifiable reason, including the client's failure to comply with any provision of this agreement.... At the time of withdrawal, ... the client will pay [the law firm for work performed] an amount for fees and costs sufficient to equal 100% of ... normal hourly rates....

The law firm filed a complaint against the client's employer. As the trial date approached, settlement negotiations intensified.

Although there was conflicting evidence concerning the negotiations, some facts were undisputed. On one occasion, the client met personally with the employer's attorney to discuss settlement. The two sides' bargaining positions were further apart after this meeting than when the meeting began. The next day, one of law firm's senior attorneys, without the client's authorization, inquired of the employer's attorney whether the employer might offer $800,000, a figure between the parties' starting positions the previous day.

When the client learned of the communication he was upset. However, nine days later, after the employer's attorney presented an offer that included the settlement figure of $800,000, together with other terms and conditions, the client authorized a counteroffer that included the same figure. The negotiations became focused on the other terms and conditions of settlement.

For a brief time it appeared that the parties were near settlement. However, the client then communicated to the law firm that he would not accept $800,000 with the conditions sought by the employer's attorney.

The law firm at this point issued a letter to the client urging him to accept the figure being discussed and reminding him of his contractual obligation "not to refuse unreasonably to settle." In the letter, the law firm characterized the client's refusal to accept this figure as "unreasonable." In a meeting a short time later, and two months before trial, the senior attorney responsible for negotiations expressed her concern about the "breakdown" in the relationship with the client. She informed the client that if matters did not "get worked out," the law firm might have to withdraw.

Without discharging the law firm, the client retained separate counsel for advice on settlement. Soon afterwards the client agreed to settlement with the employer for the figure previously discussed, but refused to pay the law firm any fees.

In the present action against the law firm, the client asserted claims of breach of contract and fiduciary duty. Before trial, the client filed a motion for partial summary

judgment, contending that the representation agreement was void because it unreasonably restricted his right to control settlement. The court denied the motion, stating that matters having to do with reasonableness are inappropriate for summary judgment. The court concluded it "was not satisfied" that the representation agreement "on its face" was void as against public policy and further concluded "that a factual presentation is necessary."

At trial, counsel for the client did not raise the issue of whether the representation agreement was unenforceable as against public policy. The client's theory of liability was that, in making the unauthorized "inquiry," the law firm had effectively put a cap on any possible settlement and that, by pressuring him with threat of withdrawal pursuant to the representation agreement, it had forced him to accept the settlement the law firm had wanted. The client contended that the law firm's conduct during the settlement negotiations was in breach of the representation agreement and of the fiduciary duty the law firm owed to him.

Both the client and the attorneys from the law firm testified to the course of negotiations. The client then sought to call the employer's attorney as an unendorsed rebuttal witness. The trial court refused to permit the testimony.

The jury returned a verdict in which it found for the law firm on the client's claims for breach of contract and breach of fiduciary duty. On the law firm's counterclaim, the jury awarded all the fees the law firm had claimed were owed under the representation agreement.

## II.

The client contends that the trial court committed reversible error when it refused to permit the client to call as a rebuttal witness the attorney who had negotiated the settlement on behalf of the employer and that the court compounded the error by allowing opposing counsel to make comments on the absence of the testimony and then describing those comments in front of the

jury as fair argument. We are not persuaded.

## A.

The client had not endorsed the employer's attorney as a witness. The law firm at one time had endorsed the attorney and attempted to depose him. However, because the final settlement agreement contained a confidentiality provision, which had been incorporated into a court order, the employer's attorney refused to respond to questions concerning the negotiations without a court order directing him to do so.

Neither the law firm nor the client sought a court order to compel the attorney to testify. Instead, the law firm removed the employer's attorney from its list of endorsed witnesses. Because of the lack of discovery, the client's offer of proof at trial was limited to a representation that testimony by the employer's attorney would be "different" from the testimony of the attorney in the law firm.

The trial court reasoned that it appeared the testimony of the employer's attorney would rebut not only the law firm's evidence but also the client's evidence. Further, because the testimony would go "to the very heart of the case," to allow the attorney to testify without having been endorsed would be improper.

## B.

A party may introduce in rebuttal any competent evidence which explains, refutes, counteracts, or disproves the evidence put on by the opposing party even if the evidence also tends to support the party's case-in-chief. Even when evidence offered in rebuttal is not squarely within the scope of the opposing party's evidence, otherwise material and competent evidence should not be rejected "*merely* because offered out of regular order, especially where ... no unfair advantage is taken and the opponent is not prejudiced." *Taylor v. Mazzola,* 150 Colo. 553, 558, 375 P.2d 96, 99 (1962) (emphasis added).

The decision whether to allow rebuttal testimony is within the discretion of the trial

court. That decision will not be disturbed on review absent an abuse of that discretion. *People v. Silburn*, 807 P.2d 1167 (Colo.App. 1990).

■ Here, because the client prior to trial did not request the trial court to abrogate the confidentiality order, the client's attorney failed to make an offer of proof sufficiently indicating the anticipated substance of the rebuttal testimony. Therefore, we cannot determine whether the testimony would have been proper rebuttal.

Further, the trial court's disallowance of this testimony was not based *merely* on its presentation out of the regular order. As noted by the trial court, the employer's attorney's testimony was central to the case. The client at no time claimed that any of the testimony of attorneys from the law firm had been a surprise to him such that rebuttal with an unendorsed witness was required.

A different ruling by the trial court would have permitted the client to circumvent the dictates of C.R.C.P. 16, which require parties to disclose information concerning persons who "may" be called to testify. It is not unreasonable to require compliance with the rule when the need for the testimony could be reasonably anticipated. *Cf. Keyes v. Lauga*, 635 F.2d 330 (5th Cir.1981).

In these circumstances, with no specific offer of proof on the attorney's anticipated testimony, no attempt to obtain prior disclosure of testimony that would go "very much to the heart of the case," and no claim of surprise in the testimony already presented, the client has failed to demonstrate that the trial court abused its discretion in refusing to allow the unendorsed witness to be called as a rebuttal witness. *Cf. In re Apex Oil Co.*, 958 F.2d 243 (8th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 180, 121 L.Ed.2d 125 (1992); *Peterson v. General Motors Corp.*, 904 F.2d 436 (8th Cir.1990). The trial court therefore did not commit reversible error in excluding the testimony of the rebuttal witness.

### C.

■ Finally, the client contends that the trial court erred in overruling his counsel's objection when opposing counsel, during closing argument, referred to the absence of the employer's attorney as a witness. He further contends that the court's characterization of counsel's statement as "fair argument" encouraged the jury to assume the employer's attorney would have testified unfavorably to the client's case. We again disagree.

The jury was not asked to infer that the testimony of the attorney would be contrary to that of the client or consistent with that of the attorneys from the law firm. Rather, the reference was part of an argument that the client had failed to satisfy his burden of proving that the law firm's unauthorized inquiry about settlement was actually perceived as an offer of settlement.

The scope of closing argument is a matter within the trial court's discretion. *People v. Alvarez*, 187 Colo. 290, 530 P.2d 506 (1975). In the context in which the reference was made, we find no abuse of discretion in overruling the objection on the grounds of fair argument.

In addition, the jury was instructed to disregard in its deliberations any remarks of the court not directed to the jury. It is presumed that the jury followed those instructions. *See People v. Carrier*, 791 P.2d 1204 (Colo.App.1990).

We therefore find no reversible error in the court's ruling or comment.

### III.

The client contends the trial court erred in denying his pretrial motion for partial summary judgment. In that motion the client had argued that the representation agreement was void as against public policy because it restricted his right to control settlement.

On appeal, the client contends that, because the representation agreement is void, the law firm is not entitled to recover as damages on its counterclaim fees calculated pursuant to the representation agreement. We agree that certain provisions of the representation agreement are unenforceable. However, because the law firm did not con-

tract to perform an act that is itself illegal, prohibited by statute, or against public policy, and because payment for the legal services provided in the circumstances presented here was contemplated by the parties and included in the contract, we conclude that the law firm is entitled to recover the reasonable value of the services rendered.

## A.

■ As an initial issue, we must determine whether the trial court's denial of the client's motion for partial summary judgment was a final order that may now be appealed. Because the denial was based on a point of law and not the existence of disputed facts, we conclude that the issue is properly before this court.

In *Manuel v. Fort Collins Newspapers, Inc.*, 631 P.2d 1114 (Colo.1981), our supreme court concluded that the propriety of the district court's denial of a motion for summary judgment in a defamation case was not reviewable on appeal. However, in his motion for summary judgment, the defendant in *Manuel* had argued that the plaintiff had failed to present facts showing that the defendant had acted with actual malice. After trial, the plaintiff had been awarded compensatory damages on the claim.

The supreme court, quoting from the decision in *Navajo Freight Lines, Inc. v. Liberty Mutual Insurance Co.*, 12 Ariz.App. 424, 471 P.2d 309 (1970), based its conclusion on the existence of a dispute over material facts. It reasoned that to address the appeal of the motion for summary judgment after the trial could lead to the "absurd" result that the plaintiff, who had sustained his position after a full trial and a more complete presentation of the evidence, might nevertheless be reversed on appeal because he had failed to prove the viability of his case at the time of the hearing on the motion for summary judgment.

In the Arizona case quoted in *Manuel*, the court distinguished between a resolution of a motion for summary judgment based on the facts and one based on a point of law. It recognized that review on appeal might be appropriate if it were "abundantly clear" that

the denial was made on a point of law and as a result the losing party was precluded from offering evidence or urging the point at the time of the trial on the merits. *Navajo Freight Lines, Inc. v. Liberty Mutual Insurance Co.*, supra, 471 P.2d at 313.

The rule announced in *Manuel* has been applied on several occasions in Colorado in refusing to address the merits of an appeal from a denial of summary judgment. *See e.g. Askew v. Gerace*, 851 P.2d 199 (Colo.App. 1992); *Garcia v. Estate of Wilkinson*, 800 P.2d 1380 (Colo.App.1990). However, none of those decisions appears to have involved a denial of summary judgment clearly based on a point of law, as distinct from one based on the existence of disputed facts. Nor does it appear that the federal courts have addressed this distinction. *Cf. Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc.*, 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966); *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1417, 122 L.Ed.2d 787 (1993) (denial of summary judgment challenging sufficiency of evidence merely a judge's determination that genuine issues of material fact exist and not appealable); *see generally* R.F. Chase, Annotation, *Reviewability of Order Denying Motion for Summary Judgment*, 15 A.L.R.3d 899 (1967).

The logic in not reviewing a denial of summary judgment based on the existence of disputed facts—to prevent a decision based on less evidence from prevailing over one reached on more—does not apply when the denial is based on a point of law. Further, that it may not always be possible to determine the basis on which the trial court denied summary judgment should not prevent review when the basis is clear. We therefore conclude, consistent with those courts that have addressed the issue, that review of a denial of summary judgment is available after trial when it is clear that the denial is based on a point of law. *See Larsen v. Pacesetter Systems, Inc.*, 74 Haw. 1, 837 P.2d 1273 (1992); *Gumm v. Combs*, 302 S.W.2d 616 (Ky.1957); *Magill v. Owen Construction Co.*, 434 So.2d 520 (La.App.1983); *Payless Drug Stores Northwest v. Brown*, 300 Or. 243, 708 P.2d 1143 (1985).

■ A separate question is whether it is necessary to raise again at trial a point of law on which a denial of summary judgment was based in order to preserve that point for appeal. We conclude it is not.

Under C.R.C.P. 56(h), a party may move for determination of a question of law at any time after the last required pleading. If there is no genuine issue of any material fact necessary for the determination of the question of law, the court may enter an order deciding the question. The result is to save time and expense and simplify the trial. *See Werkmeister v. Robinson Dairy, Inc.,* 669 P.2d 1042 (Colo.App.1983); *see generally* 10A C. Wright & A. Miller, *Federal Practice & Procedure* § 2737 (1983).

In *Uptain v. Huntington Lab, Inc.,* 723 P.2d 1322 (Colo.1986), the plaintiff argued that an objection to evidence was sufficiently preserved when it was raised in a motion in limine before trial, even though no contemporaneous objection was made when the evidence was admitted at trial. The supreme court agreed.

Reaffirming that objections duly made and ruled on in a pretrial order are sufficiently preserved for review on appeal, the court in *Uptain* found no meaningful distinction between the effect of a ruling on an objection as a result of a pretrial conference and a similar ruling on a motion in limine. In either case, when a specific issue had been presented to the trial court in advance of trial, the court had been permitted to evaluate the legal issue and the appellate court was able to apprehend the issue and the basis for the trial court's ruling. This satisfied the purpose of requiring a contemporaneous objection at trial.

We likewise find no meaningful distinction between the effect of a pretrial ruling on a point of law and a similar ruling on a motion for summary judgment. *See* 6 *Moore's Federal Practice* §§ 56.04[2] and 56.20[1] at 56–681 (2d ed. 1976) ("While the extent of pretrial under [Fed.R.Civ.P.] 16 rests in the discretion of the [federal] district court and the duty to make a pretrial order under Rule 56(d) is compulsory if practicable, the order which the court makes under Rule 56(d) is nevertheless closely akin to a pretrial order that is made under Rule 16."). In either case, if the issue is clearly based on a point of law, then the trial court will have been permitted to evaluate the legal issue, and an appellate court will be able to apprehend both the issue and the basis for the trial court's ruling.

■ We recognize that a party may raise at trial an issue previously raised on a motion for summary judgment and that a court is not precluded under the doctrine of the law of the case from revising or reversing its prior order on that issue. *See Forbes v. Goldenhersh,* 899 P.2d 246 (Colo.App.1994); 6 *Moore's Federal Practice, supra,* § 56.20[2]. Nevertheless, to avoid creating an unnecessary pitfall for the unwary and, in doing so, frustrating the efficient administration of justice, we conclude that no such duplication of time, effort, and expense should be required. *Cf. Uptain v. Huntington Lab, Inc., supra.*

■ Whether any particular provision of a contract between attorney and client is unenforceable as against public policy is a question for the court. *See Tolman v. CenCor Career Colleges, Inc.,* 851 P.2d 203 (Colo.App. 1992), *aff'd sub nom. CenCor, Inc. v. Tolman,* 868 P.2d 396 (Colo.1994); *Batterman v. Wells Fargo Ag Credit Corp.,* 802 P.2d 1112 (Colo. App.1990).

Here, the fact that the parties had entered into the representation agreement and the terms of the agreement were undisputed. No other facts were necessary for the trial court to resolve the issue of whether any provisions of the agreement were unenforceable as against public policy. Indeed, because it was an issue of law for the court, no other evidence would have been admissible. *See Specht v. Jensen,* 853 F.2d 805 (10th Cir.1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989); *see also Boettcher DTC Building Joint Venture v. Falcon Ventures,* 762 P.2d 788 (Colo.App. 1988).

In these circumstances, we conclude that the issue of whether any provisions of the representation agreement are unenforceable because they unreasonably restrict the

client's right to control settlement is properly before us.

### B.

■ It is the declared public policy of this state that parties to litigation have the right to control their own cases. *Jones v. Jones*, 117 Colo. 420, 188 P.2d 892 (1948). At the time the parties signed the representation agreement, that policy was incorporated in Code of Professional Responsibility EC 7–7, which provided that in civil cases "it is for the client to decide whether he will accept a settlement offer." The same principle is now set forth in Colorado Rules of Professional Conduct Rule 1.2(a): "A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter."

■ A client's right to reject settlement is "absolute" and "unqualified." *See Estate of Falco*, 188 Cal.App.3d 1004, 233 Cal.Rptr. 807 (1987); *Tsavaris v. Tsavaris*, 244 So.2d 450 (Fla.App.1971); *Michael D. Tully Co. v. Dollney*, 42 Ohio App.3d 138, 537 N.E.2d 242 (1987). Any provision in an agreement to provide legal services that would deprive a client of the right to control settlement is unenforceable as against public policy. *Jones v. Jones, supra; Nichols v. Orr*, 63 Colo. 333, 335, 166 P. 561, 561 (1917) ("[A]ny agreement which deprives the litigant of the right to control his case, before it is finally determined, is void as against public policy.").

■ Here, the representation agreement included a provision prohibiting the client from "unreasonably" refusing settlement. Another provision permitted the law firm to withdraw if the client did so and, upon such withdrawal, to recover costs and fees equal to the law firm's "normal" hourly rates for the work it had performed. At the same time, the agreement failed to inform the client that the court must approve any request by the law firm to withdraw, *see* C.R.C.P. 121 § 1.1(2), and that under the applicable rules of ethics, refusal of a client to accept a settlement was not a specified basis for withdrawal. *See* Code of Professional Responsibility DR 2–110 (1992); *see also* Colorado Rules of Professional Conduct Rule 1.16.

An attorney's withdrawal near the date scheduled for trial could necessitate a continuance that would be contrary to a client's interests and, if the attorney were entitled to collect for work performed fees at the full amount of the specified hourly rates, could result in increasing the total expenses the client would have to incur. These provisions of the representation agreement thus make the client vulnerable to pressure from the law firm to accept a settlement the law firm deems "reasonable." Because they inappropriately impinge on the client's right to control settlement, we conclude that the these provisions of the agreement are unenforceable as against public policy. *See Jones v. Jones, supra; Nichols v. Orr, supra.*

The law firm argues that representation agreements which provide for contingent fees should be scrutinized for reasonableness and that, because of the risk to the attorney, the terms of the law firm's representation agreement are reasonable. In support of the argument the law firm relies on *Ramirez v. Sturdevant*, 21 Cal.App.4th 904, 26 Cal. Rptr.2d 554 (1994). There, the court found a fee agreement which provided that the client would not refuse any settlement over a stated amount, though the attorney would attempt to obtain a greater amount, was not "inherently wrong or unfair."

However, unlike the agreement in question in *Ramirez*, the provisions of the agreement challenged here have the potential to create unanticipated pressure on the client to settle after the attorney-client relationship has been established and representation begun. The pressure may be greatest as the trial date approaches, when settlement negotiations are most intense and a lawyer's concerns about success at trial and the ability to recover advanced costs are the strongest.

■ We recognize that attorneys working under contingent fee arrangements risk their investment of time and, potentially, their advancement of costs on behalf of a client, and that clients can attempt to use the right of settlement to renegotiate a more favorable fee arrangement with the attorney facing such risks. Nevertheless, absent a change by the supreme court or General Assembly

in existing public policy, the client's right to control settlement cannot be diminished by a contingent fee arrangement. *See Jones v. Jones, supra; Nichols v. Orr, supra; see also Michael D. Tully Co., L.P.A. v. Dollney, supra.*

■ The law firm further contends that, even if the provisions for withdrawal if the client unreasonably refuses to settle are unenforceable, they may be severed. As a result, the law firm argues that the terms providing for calculation of fees, which are not inherently unreasonable, may be upheld.

However, these terms are inextricably intertwined. Both pertain to the consequences to the client of accepting or refusing settlement and both are part of the consideration for the agreement of the law firm to provide legal services. Furthermore, as already noted, the provision for calculating hourly fees if the law firm withdraws can itself be a source of pressure on the client to accept what the law firm considers a reasonable settlement. Conversely, our enforcement of the provision for calculating fees if the law firm does not withdraw can provide an incentive to insert provisions in fee agreements that would impinge on the client's right to control settlement.

Accordingly, the public policy of protecting a client's right to control settlement will be better served by not treating a clause that restricts the client's right to control settlement as severable from the provision for calculating fees. *See Cummings v. Patterson,* 59 Tenn.App. 536, 442 S.W.2d 640 (1968); *see also* Annot., *Compromise Without Attorney's Consent,* 121 A.L.R. 1122 § IIIa (1939).

We therefore hold that the provisions of the representation agreement prohibiting the client from unreasonably refusing to settle and permitting the law firm, in such event, to withdraw, together with the provision for calculating fees, are unenforceable. *See generally* Restatement (Second) of Contracts § 178 (1981).

## C.

■ That these provisions of the representation agreement are unenforceable does not, however, relieve the client of all obligation to pay the law firm for the services it has rendered. The representation agreement is not a contract to do an act that is itself illegal, prohibited by statute, or against public policy. *See Potter v. Swinehart,* 117 Colo. 23, 184 P.2d 149 (1947) (court will leave parties who contract to violate the law where it finds them); *see also Meyer v. State Farm Mutual Automobile Insurance Co.,* 689 P.2d 585 (Colo.1984) (if a provision in a contract is void because it is contrary to public policy, the remaining portions of the agreement are enforceable to the extent the illegal provision can be separated from the valid promises). Further, payment of legal fees in the circumstances presented here is not beyond the contemplation of the parties as memorialized in the representation agreement. *Cf. Elliott v. Joyce,* 889 P.2d 43 (Colo.1994) (attorney who withdrew not entitled to recovery in quantum meruit when fee agreement silent as to any client obligation if attorney withdraws).

In these circumstances, at least when an attorney has not engaged in fraudulent or grossly unprofessional conduct, the reasonable value of services may be recovered even if other provisions of the representation agreement, including those providing for calculation of fees, are unenforceable. *See Ross v. Scannell,* 97 Wash.2d 598, 647 P.2d 1004 (1982); *cf. Wall v. Lindner,* 159 Colo. 83, 410 P.2d 186 (1966); *Law Offices of Losavio v. Law Firm of McDivitt,* 865 P.2d 934 (Colo. App.1993).

Here, the court included an instruction to the jury, over the law firm's objection, which provided in pertinent part:

In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on his lawyer. As a typical example in a civil case, it is for the client to decide whether he will accept a settlement offer.

The jury found, on conflicting evidence, that the law firm did not breach its fiduciary duty to the client during the course of representation. Hence, it is not inequitable that the law firm be compensated on the basis of quantum meruit for the reasonable value of its services. *See Wall v. Lindner, supra; Olsen & Brown v. City of Englewood,* 867 P.2d 96 (Colo.App.1993); *Law Offices of Losavio v. Law Firm of McDivitt, supra; see also Cummings v. Patterson, supra.*

It is therefore necessary to remand for a new trial solely on the issue of the amount of fees to which the law firm is entitled on its counterclaim.

That part of the judgment awarding damages to the law firm under the representation agreement is reversed, and the cause is remanded for a new trial on the reasonable value of the law firm's services to the client. In all other respects, the judgment is affirmed.

TAUBMAN, J., concurs.

RULAND, J., concurs in part and dissents in part.

Judge RULAND concurring in part and dissenting in part.

I concur with the result reached in part II of the majority opinion. However, I disagree with the majority that the validity of the attorney-client agreement has been preserved for appellate review, and thus, I respectfully dissent as to that determination.

The trial court denied the client's motion for summary judgment on the basis that: "The court is not satisfied that this contract on its face is void as against public policy, and the court believes that a factual presentation is necessary." As to that ruling, I view the rule announced in *Manuel v. Fort Collins Newspapers, Inc.,* 631 P.2d 1114 (Colo.1981) as controlling. Hence, I would not review the trial court's decision on the motion for summary judgment.

In nine published opinions issued by this court since *Manuel* was announced, we have consistently declined to review the denial of a motion for summary judgment. Among others, these cases include *Grogan v. Taylor,* 877 P.2d 1374 (Colo.App.1994); *Askew v. Gerace,* 851 P.2d 199 (Colo.App.1992); *Garcia v. Estate of Wilkinson,* 800 P.2d 1380 (Colo.App.1990); *Vogel v. Carolina International, Inc.,* 711 P.2d 708 (Colo.App.1985); *Pierce v. Erzen,* 672 P.2d 1023 (Colo.App.1983).

These cases have not addressed the specific issue whether an appeal may be taken from the denial of a summary judgment motion which addresses only a point of law. However, in my view, there are sound reasons for consistent application of the rule in *Manuel.*

First and foremost, the rule is clear, longstanding, and the litigants should know how to proceed. Specifically, to preserve the issue, it is simply necessary for the party denied summary judgment to move for a directed verdict at trial. *See Technical Computer Services, Inc. v. Buckley,* 844 P.2d 1249 (Colo.App.1992).

Second, application of the rule in this manner coincides with the interpretation of the federal rules as well. Thus, in *Whalen v. Unit Rig, Inc.,* 974 F.2d 1248, 1251 (10th Cir.1992) (fn. 4), *cert. denied,* —— U.S. ——, 113 S.Ct. 1417, 122 L.Ed.2d 787 (1993), the court recently declined to review the denial of a motion for summary judgment and observed:

> We have found no [federal] case in which an appellate court overturned a jury verdict based on erroneous denial of summary judgment.

In my view, the adverse consequence of the exception created by the majority here will be that the party who does not prevail in either the motion for summary judgment or at trial will seek to cast the summary judgment ruling as a "point of law" on appeal. Indeed, in this context, each issue addressed on any appeal may be characterized as a question of law because this court may not adopt its own findings of fact. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979). Thus, a body of case law will then have to be developed distinguishing between rulings that may be appealed as points of law and those that may not.

Such a result will undermine the very concept which prompted the *Manuel* rule in the

first place, namely, the injustice of "depriv[ing] a party of a jury verdict after the evidence was fully presented, on the basis ... of whether the pleadings and affidavits at the time of the summary judgment motion demonstrated the need for a trial." *Locricchio v. Legal Services Corp.*, 833 F.2d 1352, 1359 (9th Cir.1987).

Hence, I would affirm the judgment of the trial court in all respects.